The TORRINGTON COMPANY,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 230, 231, Dockets 76–4135, 76–4157.

United States Court of Appeals,
Second Circuit.

Argued Dec. 1, 1976.

Decided Dec. 14, 1976.

Jay S. Siegel, Hartford, Conn. (Siegel, O'Connor & Kainen, Hartford, Conn., on the brief), for petitioner.

James M. Hirschhorn, Atty., N.L.R.B., Washington, D.C. (John S. Irving, Jr., Gen.

Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John H. Ferguson and Thomas A. Woodley, Attys., Washington, D.C., on the brief), for respondent.

Before MOORE, FEINBERG and GURFEIN, Circuit Judges.

FEINBERG, Circuit Judge:

The Torrington Company petitions for review of a decision of the National Labor Relations Board, which found it in violation of Sections 8(a)(5) and (1) of the National Labor Relations Act for refusing to supply a union local with information concerning the Company's operations at various plants. In addition to the usual relief, the Board ordered the Company to furnish the information to the union. Since the Board's order is fully supported on the record, we deny the Company's petition for review and grant the Board's cross-application for enforcement.

## I

The Company is a manufacturer of metal products with plants in Torrington, Connecticut, including its "Standard" plant, and in Thomaston, Morris, Bantam, and Waterbury, Connecticut. Local 1645, International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (the Union) is the collective bargaining representative of the production and maintenance employees at the Standard plant. Because of union concern over the Company's moving from Torrington, the collective bargaining agreement contains a provision, Article XV, Section 15.2, which gives the employees certain rights in the event that the Company "transfers any operations" from its Standard plant to another plant within a 75-mile radius of Torrington.[1] The Thomaston, Morris, Bantam, and Waterbury plants are all within 75 miles of Torrington.

In June 1974, the Union requested information on, among other things, the number of employees and the products manufactured in the plants outside Torrington, and any transfer of operations from the Standard plant. The Union sought this information in light of reports that the Company was reassigning work normally done at Standard to other plants and "in order to police and administer intelligently" Section 15.2 of the Standard plant contract. At first, the Company responded that it was under no obligation to provide the information, but in November 1974, it did provide a partial answer to the requests. With respect to the questions concerning the Standard plant, the Company stated, in essence, that there had been no transfers from Standard. The Company then maintained its stance that it was under no obligation to answer the questions concerning the plants that the Union did not represent. We agree with the Board that this response was not satisfactory.

## II

The duty to bargain in good faith obliges the employer to furnish information enabling the union to make an intelligent decision about processing grievances. *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967). Here, although some of the information sought related to employees whom the Union did not represent, the Union did show that the information was relevant to its enforcement of the contract by virtue of Section 15.2. See *Prudential Insurance Co. v. NLRB,* 412 F.2d 77, 84 (2d Cir.), cert. denied, 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969). The Company stresses that

---

1. Section 15.2 provides:

   If the Company transfers any operations from one of its existing plants in Torrington to another of its present plants in Torrington, or to a plant hereafter constructed or acquired by the Company within a radius of seventy-five (75) land miles from the center of the City of Torrington, the employees involved shall follow their jobs without loss of seniority or continuous Company service. In any such plant hereafter constructed or acquired within the above radius of seventy-five (75) land miles, the Company agrees to recognize Local 1645, as the bargaining representative for such employees, if it is not illegal to do so.

there have been no "transfers" of "operations" under Section 15.2 because that phrase only covers actions such as physical relocation of machinery and permanent transfer of employees. The Union, on the other hand, interprets the phrase as covering reassignments of work that are less direct and more covert. Whatever the final merits of the Union's claim, under Section 15.7 [2] of the contract the Union has the right to ask an arbitrator to determine the contractual meaning of the terms. And the Union is entitled to the information under the "discovery-type" standard announced in *Acme,* supra, 385 U.S. at 437, 87 S.Ct. 565, in order to judge for itself whether to press its claims before the arbitrator or the Board. The Company argues that Section 15.7 precludes arbitration over any Company decision to transfer, regardless of how transfer is defined. The argument is without merit. Although the decision to transfer may be non-arbitrable under Section 15.7, Section 15.2 gives the employees certain rights in the event of transfer. The issue whether those rights were adequately recognized would be arbitrable. *Int'l Union of Electrical, Radio & Machine Workers v. General Electric Co.,* 407 F.2d 253, 261–62 (2d Cir. 1968), cert. denied, 395 U.S. 904, 89 S.Ct. 1742 23 L.Ed.2d 217 (1969).

We also find unpersuasive the Company's claim that its answers with respect to the Standard plant were complete and accurate given its definition of "transfer." The Board found violations for the five-month delay between the Company's response and the Union's request and for those answers in which the Company withheld information that was available to it. The Board deferred, until the compliance stage, its finding on certain questions involving "transfers" since they might be rendered moot by the Company's answers to the other questions. This decision was not unreasonable under the circumstances.

Petition for review denied and cross-application for enforcement granted.

2.  Section 15.7 provides:
    Any dispute as to the application of this Article [XV] shall be subject to the grievance

procedure and to arbitration, but not the Company's decision to subcontract work or to transfer operations or equipment.