NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DESIGNCRAFT JEWEL INDUSTRIES,
INC., Respondent.

No. 652, Docket 81–4142.

United States Court of Appeals,
Second Circuit.

Argued Feb. 8, 1982.
Decided March 23, 1982.

Ruth Ihne, Atty., N. L. R. B., Washington, D. C. (William A. Lubbers, Gen.

Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliot Moore, Deputy Associate Gen. Counsel, Washington, D. C., of counsel), for petitioner N. L. R. B.

Stanley Israel, New York City (Kliegman, Goldstein, Israel & Cooper, New York City, of counsel), for respondent Designcraft Jewel Industries, Inc.

Before OAKES, NEWMAN and PIERCE, Circuit Judges.

## PER CURIAM:

The National Labor Relations Board ("the Board") petitions for enforcement of its order requiring Designcraft Jewel Industries, Inc., ("Designcraft" or "the Company") to furnish to the Amalgamated Jewelry, Diamond and Watchcase Workers Union, Local 1, International Jewelry Workers Union, AFL–CIO ("the Union"), various business records. The Board and the Union maintain that the records are needed in order to determine whether the Company has violated a collective bargaining agreement ("the Agreement") between it and the Union by subcontracting work while Company employees were laid off.[1]

## BACKGROUND

Respondent Designcraft is a New York corporation which manufactures jewelry. During the first half of 1978 the Company laid off several members of its production staff. It came to the Union's attention that during this period Designcraft was purchasing castings for jewelry from an outside, non-union manufacturer. These castings were items that the laid-off Designcraft employees could have made. Pursuant to the Agreement, the Union took the matter to arbitration.[2] The Union claimed that Article 32 of the Agreement forbade the purchase of castings from an outside manufacturer while Designcraft employees were laid off.[3] The arbitrator found that the Company had violated Article 32 and, in an award issued in November of 1978, ordered the Company to reinstate the laid-off employees and compensate them for lost wages.

Instead of complying, Designcraft laid off additional employees in late 1978. Bernard Karcinell, Designcraft's president, told the Union that the lay-offs were the result of poor sales. The Union, not unreasonably suspicious of the truth of this claim, made another demand for arbitration on January 18, 1979, claiming further violations of Article 32. By letter dated January 22, 1979, the Union demanded that the Company allow it to "examine [the Company's] books to determine the status of the sales of the companies and to determine whether or not any sub-contracting has been, or is being done in violation of Article XXXII of the Collective Bargaining Agreement."[4] Through its attorney, the Company informed the Union that the question of producing the books was a matter for arbitration.

On February 12, 1979, the Union filed an unfair labor practice charge with the Board's Regional Director, claiming that the Company's failure to furnish the Union with the relevant books and records violat-

---

1. The Agreement was between the Union and Jewelry Manufacturers Association, Inc. & Associate Jewelers, Inc. Respondent Designcraft was a member of the Association and was at all relevant times bound by the Agreement.

2. These facts were found by the arbitrator in rendering her award following an arbitral hearing. Also charged by the Union with a violation of the Agreement was Finecraft Jewelers, Inc., a related corporation—Bernard Karcinell was president of both Designcraft and Finecraft at that time. Finecraft, which is not a party to the present action, also produced some cast products, though a smaller percentage of its production was manufactured by the casting method than was true of Designcraft.

3. Article 32 provides in pertinent part that "[t]he employers agree that they will not send any work to outside shops while their employees, who are capable of doing the type, kind and quality of work, are unemployed."

4. At the time the letter was sent, the Union wished to examine the books both of respondent and of Finecraft, the related corporation discussed in n.2 supra. The Union did not pursue claims against Finecraft in the present action.

ed Section 8(a)(5) and (1) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(1), (5). A complaint was issued by the Regional Director on March 30, 1979, charging the Company with the violation alleged by the Union.

On May 8, 1979, an arbitration hearing was held and on June 29, 1979, the arbitrator issued an award accompanied by a sparse factual finding. The award required the Company to deliver to the Union the following books and records: 1) the accounts payable journal for the period from January of 1978 until February of 1979; 2) the Company check books for the same period; 3) a list of all employees in the Company's receiving department; and 4) a list of all non-bargaining unit employees at the Company's New York facility.

At least some of these records were furnished to the Union.[5] However, the Union's accountant claimed that these records provided inadequate information upon which he could determine whether subcontracting had occurred. The Union applied to the arbitrator for additional books and records. In a one-page letter dated December 28, 1979, the arbitrator denied this application.

On June 23, 1980, a hearing was held on the unfair labor practice charge before a Board administrative law judge ("the ALJ"). On October 28, 1980, the ALJ issued an extensive opinion recommending, inter alia, that the Company be ordered to furnish to the Union the following books and records for the period from January 1, 1978, to February 28, 1979: 1) its list of customers; 2) the accounts payable journal; 3) invoices from suppliers; 4) check books; 5) the general ledger; 6) the general journal; 7) the chart of accounts; and 8) computer summary sheets. In an order dated January 26, 1981, the Board adopted the ALJ's recommendation. The Board then petitioned this Court for enforcement of that order.

## DISCUSSION

The law is well-settled that under section 8(a)(5) of the Act the Union was entitled to examine such of the Company's books and records as were needed to establish the existence or non-existence of the alleged breach of Article 32 of the Agreement.[6] See N. L. R. B. v. Acme Industrial Co., 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967); N. L. R. B. v. Truitt Mfg. Co., 351 U.S. 149, 152–53, 76 S.Ct. 753, 755–56, 100 L.Ed. 1027 (1956).

Thus, the only question that we must decide is whether the Board abused its discretion in failing to defer to the arbitrator's determinations of June 29, 1979, and December 28, 1979. In Liquor Salesmen's Union Local 2 v. N. L. R. B., 664 F.2d 318 (2nd Cir. 1981), this Court stated that while the Board is not obligated by statute to defer to an arbitral determination, and while it has broad discretion to determine the circumstances under which it will defer, once the Board has enunciated standards of deference it "cannot lightly change the rules on a case by case basis." 664 F.2d at 326. The Courts have strongly encouraged the settle-

---

**5.** It is apparent from the record that although the Company did not furnish the exact records specified in the arbitral determination, with regard to the financial records the functional equivalents were provided. It is not clear from the record whether the employee lists were furnished to the Union as per the arbitral award.

**6.** Section 8(a)(5) of the Act provides that "(a) It shall be an unfair labor practice for an employer—(1) to refuse to bargain collectively with the representatives of his employees." With regard to section 8(a)(5), the courts have consistently held and the Supreme Court has stated that "[t]here can be no question of the general obligation of an employer to provide information that is needed by the bargaining representative for the proper performance of its duties." N. L. R. B. v. Acme Industrial Co., 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967). See also, Detroit Edison Co. v. NLRB, 440 U.S. 301, 303, 99 S.Ct. 1123, 1125, 59 L.Ed.2d 333 (1979); Torrington Co. v. NLRB, 545 F.2d 840, 841 (2nd Cir. 1976); United Aircraft Corp. v. NLRB, 434 F.2d 1198, 1204 (2nd Cir. 1970), cert. denied, 401 U.S. 993, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971). The Acme Court went on to refer to the rights of the employee representative to access to relevant information as "statutory rights under § 8(a)(5)." Id. 385 U.S. at 436, 87 S.Ct. at 568.

ment of labor disputes by arbitration and have recognized that the reaching of this goal is aided by a policy of deferral on the part of the Board. *See, e.g., Carey v. Westinghouse Corp.*, 375 U.S. 261, 270–72, 84 S.Ct. 401, 408–09, 11 L.Ed.2d 320 (1964).

The *Liquor Salesmen's Union* Court found that the Board's standards of deference were set forth in two Board decisions: *Spielberg Manufacturing Co.*, 112 NLRB 1080 (1955), and *Suburban Motor Freight, Inc.*, 247 NLRB No. 2, 103 LRRM 1113 (1980). (The doctrine under which the Board defers to prior arbitration awards is commonly referred to as "the *Spielberg* doctrine"). *Spielberg* held that the Board would defer to an arbitration award if three criteria were met: 1) the arbitration proceedings appear to have been fair and regular; 2) the parties had agreed to be bound by the arbitrator's determination; and 3) the decision of the arbitrator was not clearly repugnant to the purposes of the Act. 112 NLRB at 1082. *Suburban Motor Freight* held that, in addition, the Board will not defer unless the unfair labor practice issue has been presented to and considered by the arbitrator. Moreover, the party urging deferral has the burden of proving that this latter requirement was met.

The Court finds that the criterion set forth in *Suburban Motor Freight* has not been met in the present case. The Board was therefore not obligated to defer. As noted in footnote 6, *supra*, the Union had a statutory right to examine the relevant books and records. The Company's failure to produce these books and records was the unfair labor practice complained of before the Board. The Court finds no evidence in the record that the Union's statutory right to examine the Company's books was presented to and considered by the arbitrator.

Moreover, the facts of this matter bring it within the ambit of the Board's decision in *Montgomery Ward & Co.*, 234 NLRB 588 (1978). In *Montgomery Ward*, as here, the union brought a grievance before an arbitrator pursuant to a collective bargaining agreement. At issue was the company's failure to timely furnish the union with information needed to ascertain the merits of the underlying grievance prior to the arbitration proceeding. The Board held that the company's failure to furnish the requested information in a timely fashion was a procedural matter with respect to the underlying grievance before the arbitrator. However, the Union's right to the requested information under section 8(a)(5) was the substantive question raised in the unfair labor practice charge brought before the Board. Therefore, the Board found that deferral under *Spielberg* was inappropriate. 234 NLRB at 589.

The underlying grievance which the Union sought to have arbitrated in the present matter was the alleged Article 32 violation. The issue of the Union's request for Designcraft's books and records was a procedural matter attendant to that question. The unfair labor practice charge, however, was that the Company had violated the Union's statutory right to examine the relevant books and records, as was the case in *Montgomery Ward*. The latter case is apposite and the Board acted within its discretion in not deferring to the arbitral award in this case.

Furthermore, the collective bargaining agreement in *Montgomery Ward* was silent as to any contractual obligation on the company's part to furnish information to the union, and the latter was consequently not bound to submit the question to arbitration. "Accordingly, [Montgomery Ward could not] justify its refusal on the grounds that it was seeking a determination from an arbitrator regarding the Union's request for information and the Employer's obligation to furnish such information." 234 NLRB at 590. The agreement in the present case is similarly silent regarding the obligation of the Company to furnish books and records and the same rationale holds true. Here it was the Company's *initial* failure to provide the requested information or otherwise meaningfully respond to the request for information that was a violation of section 8(a)(5), and, as noted above, the record does

not indicate that the statutory right was considered by the arbitrator. Consequently, the Board's criteria for deferral under *Spielberg* and *Suburban Motor Freight* were not met and the Board was within its discretion not to defer.

Respondent's other points are without merit. Respondent's claim that its failure to produce the requested books and records was at most a "technical" violation of the Act is at odds with the facts. It is clear from the record that the information requested was pertinent to determining whether the Company had violated the Agreement by subcontracting and the failure to furnish this information was therefore a material violation of the Act. *See New York Printing Pressmen & Offset, Etc. v. N. L. R. B.*, 538 F.2d 496, 500 (2nd Cir. 1976).

The Company also claims that the Union's initial request to examine the Company's "books" in order to determine whether a violation of Article 32 had occurred was too vague and ambiguous, thereby relieving the Company of any obligation under section 8(a)(5). In *N. L. R. B. v. Bagel Bakers Council of Greater New York*, 434 F.2d 884 (2nd Cir. 1970), *cert. denied*, 402 U.S. 908, 91 S.Ct. 1380, 28 L.Ed.2d 648 (1971), this Court found the following union request for financial information from the companies to be adequately clear for the purposes of the Act:

> "Bring your books to us. Bring an audit, accountant's report. Show us where you are losing money so we can guide ourselves and know in which direction we are going." *Id.* at 887.

Against this standard, the Court finds the request for information in the present case to have been clear and adequate.

In reaching our holdings herein, we note that the time it takes an agency to act ought to have some bearing on whether the action should be taken. The chronology of the instant proceeding raises a serious question as to whether the Board's exercise of its discretion comports with the national labor policy favoring arbitration of disputes. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Even though the relationship of the Board to the arbitration process is of a "different order" than that of the courts, *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 436, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967), the Board's authority to adjudicate unfair labor practices ought not to be exercised in a way that is needlessly disruptive of the arbitration process.

As we have noted, *supra*, the unfair labor charge in this case was filed by the Regional Director on March 30, 1979. Nearly two years later, on January 26, 1981, the Board upheld the ALJ's finding of an unfair labor practice. The Board did not seek enforcement of its order in this Court until August 7, 1981; its subsequent motions for additional time to file a joint appendix and for leave to file a supplemental appendix delayed the hearing of this petition until February 8, 1982, nearly three years after the filing of the charge and more than two years after the arbitrator had ruled on December 28, 1979, that additional documents were not needed. The arbitration has been stalled for more than two years awaiting disposition of the unfair labor practice charge. The volume of business thrust upon the Board may make such delays inevitable, but that does not relieve the Board of an obligation in appropriate cases either to expedite its consideration and its request for enforcement, or to forgo an unfair labor practice charge because the time to process it will undermine the strong labor policy of promoting prompt arbitration of disputes.

In *Acme*, the Supreme Court, in upholding the Board's authority to adjudicate an unfair labor practice charge that a company was withholding documents needed for an arbitration proceeding, observed that the Board's action was "in aid of the arbitral process." 385 U.S. at 438, 87 S.Ct. at 569. When it takes three years to bring to this Court the issue of whether a company's documents should be produced, it seems fair to ask whether the Board's action is aiding the arbitral process.

While we find that the arbitrator's decision (that the additional documents were not needed to arbitrate the dispute) was a procedural ruling and not an assessment of the Company's obligations under the Act, we nonetheless question whether the Board's insistence on litigating this matter at all, much less at a glacial pace, was consistent with its statutory mandate.

## SUMMARY

Despite these expressions of concern, for the reasons stated hereinabove, we are constrained to find that the Board was within its discretion in not deferring to the arbitrator's determination. Respondent's other arguments against enforcement of the Board's order are without merit and enforcement is granted.