The CHESAPEAKE AND POTOMAC
TELEPHONE COMPANY,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

Communications Workers of America,
AFL–CIO, Intervenor.

Nos. 942, 1157, Dockets 81–4251, 82–4021.

United States Court of Appeals,
Second Circuit.

Argued April 26, 1982.
Decided Aug. 25, 1982.

Ruth A. Ihne, Atty., N. L. R. B., Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Marjorie S. Gofreed, Atty., N. L. R. B., Washington, D. C., of counsel), for respondent.

Peter J. Carre, Washington, D. C. (Bernard M. Dworski, Washington, D. C., of counsel), for petitioner.

Ann F. Hoffman, New York City, (Norman M. Gleichman, Washington, D. C., Thomas S. Adair, Adair & Goldthwaite, P. C., Atlanta, Ga., of counsel), for intervenor.

Before KEARSE and MANSFIELD, Circuit Judges, and CABRANES,* District Judge.

MANSFIELD, Circuit Judge:

The Chesapeake and Potomac Telephone Company ("C&P") petitions for review of an order of the National Labor Relations Board ("the Board") requiring it to furnish to the Communications Workers of America, AFL–CIO ("CWA" or "the Union") information sought by CWA to assist it in determining whether to continue arbitration of a grievance and in preparing for arbitration should it decide to do so. The Board cross-petitions for enforcement of its order. CWA has intervened, and also argues for enforcement. We deny C&P's petition for review and grant the Board's petition for enforcement.

In late 1978 C&P suspended an employee named Dennis Henson for using an improper tone of voice in speaking to a customer over a telephone. CWA, Henson's union, filed a grievance on his behalf pursuant to its collective bargaining agreement with C&P, which provides for a three-step grievance procedure to be followed, if necessary, by arbitration. The Board found that at the second step conference on or about December 19, 1978, CWA representative Michael Agnew requested from C&P a list of

employees suspended for the same offense, but that C&P refused to provide such information. The parties were unable to settle the grievance and proceeded to the third step. The Board found that at the third step conference on February 13, 1979, CWA national representative Charles Sangmeister made the Union's second request for the names of C&P employees who had been suspended for using an improper tone of voice. Again C&P refused to provide the information. The parties were unable to resolve the grievance at the third step conference.

On February 14, 1979, CWA filed a demand for arbitration. In order to determine whether to arbitrate, settle, or withdraw Henson's grievance, and to prepare for any arbitration hearing that might be held, Michael Murphy, the CWA attorney who had responsibility for handling the grievance at arbitration, requested from C&P information on past suspensions of employees by it for use of an improper tone of voice. When C&P refused to comply with his informal request, Murphy, on October 10, 1979, issued a subpoena signed by the impartial arbitrator and the Union-designated arbitrator, requiring C&P to produce before the arbitration hearing the "name of each employee fired, suspended, or given a final warning solely for an improper tone of voice toward a customer during the last five years." C&P declined to comply with the subpoena on the ground that it was not the parties' practice to engage in pre-arbitration discovery after an arbitration demand, but offered to produce such a list at the arbitration hearing if the arbitrator ruled it relevant.

The Union then postponed the arbitration hearing, which had been scheduled for December 11, 1979. It sought to enforce the subpoena in the U. S. District Court for the District of Columbia, but on January 7, 1980, that court, in a summary decision by Judge John H. Pratt, denied its petition on

* Hon. José A. Cabranes of the U. S. District Court for the District of Connecticut, sitting by designation.

the ground that 9 U.S.C. § 7 does not permit the enforcement of an arbitration subpoena issued prior to an arbitration hearing. CWA did not appeal this decision, but on February 15, 1980, it filed an unfair labor practice charge with the Board. The Regional Director issued a complaint on July 3, 1980. Because it was unwilling to go to the expense of holding the arbitration hearing without the list it had subpoenaed, CWA made an *ex parte* request to the impartial arbitrator that the hearing, which was by now scheduled for September 4, 1980, be postponed pending a decision by the Board on the unfair labor practice complaint. CWA claims that it did not inform C&P of this request because it did not believe that C&P would have any objection. Agreeing that it would be "futile" to hold the hearing before a Board decision, the impartial arbitrator postponed the hearing.

In a decision filed on June 10, 1981, Administrative Law Judge ("ALJ") Benjamin Schlesinger found the facts as stated above and concluded that C&P had violated § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) & (1), by refusing to furnish to the Union whatever material it had that was called for by the subpoena. The ALJ rejected C&P's arguments that past practice, waiver, collateral estoppel, and union bad faith required dismissal of the complaint. He also rejected C&P's argument that the Union's charge was not timely under § 10(b) of the Act, 29 U.S.C. § 160(b). Finally he found that the Union request was not unduly burdensome and ordered that C&P comply with it, stating:

> "It is not the intention of this Decision to require Respondent [C&P] to search through thousands of files. On the other hand, Respondent should make reasonable efforts to comply with the Union's request and, if there is still a claim of burden, attempt to reach some accommodation with the Union so that information is supplied. If there is still further

dispute, that may be resolved in the compliance stage of this proceeding. *Food Employer Council, Inc.*, 197 N.L.R.B. 651 (1972)."

On November 12, 1981, the Board affirmed and adopted the ALJ's rulings, findings, and recommended Order without opinion. C&P then petitioned this court for review of the Board's order and the Board cross-petitioned for enforcement.

## DISCUSSION

■ The Supreme Court in *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967), established that an employer's statutory duty to turn over to a union "information that is needed by the bargaining representative for the proper performance of its duties," *id.* at 435–36, 87 S.Ct. at 567–68, extends to requests for information needed by the union to determine whether to take a grievance to arbitration.[1] Accord *Torrington Co. v. NLRB*, 545 F.2d 840 (2d Cir. 1976). C&P neither challenges this principle nor questions the relevancy of the information sought. It argues, however, that once a union has invoked arbitration, its statutory "discovery" rights should be cut off in order to ensure a prompt resolution of the underlying dispute through the arbitration process. C&P cites no authority for this proposed ruled.

Other circuits have held that "[t]he duty of an employer to furnish information relevant to the processing of a grievance does not terminate when the grievance is taken to arbitration." *Cook Paint & Varnish Co. v. NLRB*, 648 F.2d 712, 716 (D.C.Cir.1981). Accord *NLRB v. Davol, Inc.*, 597 F.2d 782, 786–87 (1st Cir. 1979). Although the issue was not raised, we recently enforced a Board order requiring a company to furnish information even though the union involved had already invoked arbitration. *NLRB v. Designcraft Jewel Industries, Inc.*, 675 F.2d 493 (2d Cir. 1982). The Board also has consistently held that the duty to disclose

---

1. The union's right to the disclosure of information is not unlimited. See, e.g., *American Telephone & Telegraph Co.*, 250 N.L.R.B. 47 n.2 (1980) (no duty to produce witness statements),

enforced sub nom., *Communication Workers Local 1051 v. NLRB*, 644 F.2d 923 (1st Cir. 1981); *Anheuser-Busch, Inc.*, 237 N.L.R.B. 982 (1978) (same).

does not cease when a union invokes arbitration. See, e.g., *St. Joseph's Hospital (Our Lady of Providence Unit)*, 233 N.L.R.B. 1116, 1119 (1977); *Fawcett Printing Corp.*, 201 N.L.R.B. 964, 972–73 (1973); *Fafnir Bearing Co.*, 146 N.L.R.B. 1582, 1586 (1964), *enforced*, 362 F.2d 716 (2d Cir. 1966). We agree.

Sound reasons exist for not terminating a party's discovery rights merely because arbitration has been invoked. Reasonable discovery of material relevant to a grievance prior to an arbitration hearing enables a union to make an informed evaluation of the merits of its claim and to withdraw the arbitration demand or settle the grievance if the information indicates that the grievance is less meritorious than it had initially believed, thus eliminating delay and expense that might otherwise be incurred. C&P's argument, that failure to cut off discovery will delay the arbitration process because the parties will litigate before the Board the issue of whether evidence must be disclosed, misses the mark. Arbitration may to the same extent be delayed by requests for materials made before it is actually invoked. Moreover, failure to request relevant information until after arbitration is invoked may be attributed to the fact that union officials who handle grievance steps, unlike skilled lawyers who enter when arbitration is demanded, may not appreciate the necessity for uncovering and marshalling evidence bearing on the strengths and weaknesses of the union's case in order to decide how to proceed. Reasonable delay of arbitration for this purpose is therefore justifiable. In the present case, for example, disclosure of the type of discipline, if any, imposed by C&P upon employees in the past for exhibiting an improper attitude toward customers could lead to withdrawal of the Union's arbitration demand or settlement by C&P, depending on whether C&P's practice was consistent with the discipline imposed here.

We therefore conclude that a company's duty to produce information relating to a grievance survives a union arbitration demand.

C&P argues next that CWA has waived any statutory right to request information having invoked arbitration. A union's right to request information can be waived. *Southwestern Bell Telephone Co. v. NLRB*, 667 F.2d 470, 476 & n.6 (5th Cir. 1982); *Timken Roller Bearing Co. v. NLRB*, 325 F.2d 746, 751 (6th Cir. 1963), *cert. denied*, 376 U.S. 971, 84 S.Ct. 1135, 12 L.Ed.2d 85 (1964); see *NLRB v. Acme Industrial Co., supra*, 385 U.S. at 435, 87 S.Ct. at 567. However, national labor policy disfavors waivers of statutory rights by unions and thus a union's intention to waive a right must be clear before a claim of waiver can succeed. Waivers can occur in any of three ways: by express provision in the collective bargaining agreement, by the conduct of the parties (including past practices, bargaining history, and action or inaction), or by a combination of the two. The language of a collective bargaining agreement will effectuate a waiver only if it is "clear and unmistakable" in waiving the statutory right. *Fafnir Bearing Co. v. NLRB*, 362 F.2d 716, 722 (2d Cir. 1966). Accord *NLRB v. Pepsi-Cola Distributing Co., Inc.*, 646 F.2d 1173, 1176 (6th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982); *Proctor & Gamble Manufacturing Co. v. NLRB*, 603 F.2d 1310, 1317–18 (8th Cir. 1979); *Road Sprinkler Fitters Local Union No. 669 v. NLRB*, 600 F.2d 918, 922–23 (D.C.Cir.1979) (*Road Sprinkler I*); *General Electric Co. v. NLRB*, 414 F.2d 918, 923 (4th Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 557, 24 L.Ed.2d 496 (1970); *Timken Roller Bearing Co. v. NLRB, supra*, 325 F.2d at 751. The same standard applies to conduct of the parties; whether alone or in combination with contractual language, conduct can effectuate a waiver only if the union's intent to waive is clear and unmistakable from the evidence presented. *Road Sprinkler Fitters Local Union No. 669 v. NLRB*, 676 F.2d 826, 831 (D.C.Cir.1982) (*Road Sprinkler II*); *Communication Workers Local 1051 v. NLRB*, 644 F.2d 923, 927 (1st Cir. 1981); *Proctor & Gamble Manufacturing Co. v. NLRB, supra*, 603 F.2d at 1317–18; *Florida Steel Corp. v. NLRB*, 601 F.2d 125, 129–30 (4th Cir. 1979); *Metrome-*

*dia, Inc., KMBC–TV v. NLRB,* 586 F.2d 1182, 1189 (8th Cir. 1978); *NLRB v. R. L. Sweet Lumber Co.,* 515 F.2d 785, 795 (10th Cir.), *cert. denied,* 423 U.S. 986, 96 S.Ct. 393, 46 L.Ed.2d 302 (1975); *C–B Buick, Inc. v. NLRB,* 506 F.2d 1086, 1096 n.21 (3d Cir. 1974).

■ Applying these principles here, the Board's finding that the Union did not waive its right to the requested information is supported by substantial evidence. C&P relies upon language in the collective bargaining agreement to the effect that arbitration hearings "shall [be] conduct[ed] . . . in accordance with the Voluntary Arbitration Rules of the American Arbitration Association," and notes that those rules do not provide for prehearing discovery. However, the fact that the Union agreed that arbitration hearings would be governed by the AAA rules hardly proves that it has waived its statutory right to discovery before a hearing takes place, especially under the "clear and unmistakable" standard.

C&P also relies on the 1953 statement of an arbitrator who deferred consideration of a union request for documents until the arbitration hearing "on the belief that the [arbitration] board was not empowered to pass upon any issue until such time as it had formally convened and commenced the hearing pursuant to the stipulation of the parties," noting that the parties failed thereafter to negotiate a different provision in more recent contracts. This history is not probative, however, since the 1953 statement did not relate to the Union's *statutory* right to discovery, which is the basis of the present proceeding.

Finally, C&P attempts to prove that the parties' past practice has been that pre-arbitration discovery is not allowed. At best C&P has shown that on some occasions it has refused to furnish information. That CWA did not file unfair labor practice charges on these few occasions hardly establishes "clear and unmistakable" waiver, especially since on other occasions C&P produced requested information.

■ C&P next contends that the CWA charge of an unfair labor practice is time-barred by § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). Section 10(b) provides in pertinent part that

"no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made . . . ."

The conduct complained of here is C&P's refusal on October 11, 1979, to comply with the subpoena issued by the Union and impartial arbitrators. The Union filed its charge with the Regional Director on February 15, 1980, within six months of the conduct in question. C&P notes, however, that CWA claimed, and the Board found, that on two previous occasions, December 19, 1978, and February 13, 1979, CWA requested the information. Relying on our decision in *General Marine Transport Corp. v. NLRB,* 619 F.2d 180 (2d Cir. 1980), C&P argues that because CWA failed to file a charge within six months of its first refusal to produce the information, § 10(b) bars the issuance of the complaint.

This argument misconstrues *General Marine Transport.* In that case we held that an unfair labor practice charge arising out of a refusal to abide by the terms of a collective bargaining agreement must be filed within six months of the *repudiation of that agreement,* because a charge based upon a refusal more than six months later to abide by the agreement would be " 'inescapably grounded' on a time-barred event." 619 F.2d at 186 (quoting *Local Lodge 1424, International Association of Machinists v. NLRB,* 361 U.S. 411, 422, 80 S.Ct. 822, 829, 4 L.Ed.2d 832 (1960)). Once a collective bargaining agreement is repudiated, and the § 10(b) statute of limitations with respect to an unfair labor practice charge arising out of its repudiation has run, a party cannot escape § 10(b) by once again demanding compliance with the agreement.[2]

2. There may be circumstances, however, in which even a subsequent repudiation will con-

stitute a separate unfair labor practice. See *General Marine Transport, supra,* at 187–89.

By contrast, C&P's earlier refusals to furnish the particular information requested here were not repudiations of its collective bargaining agreement with CWA. C&P continued to have a duty under the Act to bargain collectively with CWA, one aspect of which was its duty to furnish information needed by the Union to administer the terms of their agreement and to carry out its statutory duties and responsibilities. Thus C&P's failure to comply with the subpoena was an independent unfair labor practice. *Cone Mills Corp. v. NLRB*, 413 F.2d 445, 448–49 (4th Cir. 1969); see *J. Ray McDermott & Co., Inc. v. NLRB*, 571 F.2d 850, 858 (5th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *New York District Council No. 9, International Brotherhood of Painters v. NLRB*, 453 F.2d 783, 786 (2d Cir. 1971), *cert. denied*, 408 U.S. 930, 92 S.Ct. 2491, 33 L.Ed.2d 342 (1972); *NLRB v. Field & Sons, Inc.*, 462 F.2d 748, 750–51 (1st Cir. 1972); *Shumate v. NLRB*, 452 F.2d 717, 720 (4th Cir. 1971); cf. *NLRB v. Electric Furnace Co.*, 327 F.2d 373, 375–76 (6th Cir. 1964). Since the unfair labor practice charge was filed within six months of C&P's refusal to comply with the subpoena, the complaint is not barred by § 10(b).

■ C&P also argues that compliance with the Board's order would be unduly burdensome because it would require a search of "thousands of files." The ALJ found the testimony of C&P's attorney, Mr. Dworski, along these lines to be "general, vague, second-hand, and contradictory." This credibility finding is buttressed by C&P's own "Personnel Guide for Supervisors," which instructs supervisors considering what penalty to impose for an infraction that "[d]ata on previous, similar cases can be obtained from the Personnel Department—Labor Relations Staff" and that "[a] check with Labor Relations can provide data on previous suspensions for similar cases and thus avoid disparity." The finding that the request was not unduly burdensome is therefore supported by substantial evidence. Moreover, the ALJ made clear that the order did not require a search of "thousands of files" and that problems of burdensomeness could be dealt with in the compliance stage.

■ We find no merit in C&P's remaining arguments.[3] The petition for review is denied and the cross-petition for enforcement is granted.

---

3. C&P makes two additional arguments. First, it argues that CWA had alternate means of obtaining the information (by polling its members) and therefore that it (C&P) should be relieved of its duty to produce the information. In both accuracy and completeness a membership poll would be a poor substitute for records kept by C&P; the Board was well within its discretion in rejecting this defense. See *NLRB v. General Electric Co.*, 418 F.2d 736, 753 (2d Cir. 1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 995, 25 L.Ed.2d 257 (1970).

C&P's second additional argument is that CWA makes the request for information in bad faith. C&P supports this assertion by noting that CWA acted *ex parte* in obtaining the postponement of the last scheduled arbitration hearing. The ALJ rejected this argument, holding that it fails to prove a lack of sincerity on CWA's part and that the prospective substantial costs of the hearing demonstrated the reasonableness of CWA's desire to postpone it until after receiving the requested information. Moreover, CWA claims that it did not believe that C&P would have had any objection to a postponement. Clearly the Board's finding that this was not a bad faith request is supported by substantial evidence. To convene a hearing before production of the requested information would have been pointless and wasteful since the arbitrators would undoubtedly have declared a recess until the issue regarding disclosure of the relevant information had been resolved and the data produced for inspection by the Union.