**NATIONAL LABOR RELATIONS BOARD,**
Petitioner–Cross–Respondent,

v.

**ACES MECHANICAL CORP.,**
Respondent–Cross–Petitioner.

**Nos. 219, 154, Dockets 87–4039, 87–4049.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 9, 1987.

Decided Jan. 22, 1988.

Harriet Lipkin, Atty., N.L.R.B., Washington, D.C. (Collis Suzanne Stocking, Supervisory Atty., Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, on the Brief), for petitioner-cross-respondent.

Anthony L. Tersigni, New York City (Meyers, Tersigni, Lurie, Feldman & Gray, New York City, of counsel), for respondent-cross-petitioner.

Before KAUFMAN and ALTIMARI, Circuit Judges, and TENNEY, District Judge.[*]

TENNEY, District Judge:

This is an application for enforcement and a cross-petition for review of an order of the National Labor Relations Board ("NLRB" or "Board") against Aces Mechanical Corp. ("Aces"). The Board's order charges that Aces violated section 8(a)(1) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1) (1982), by threatening to dismiss employee Steven J. O'Toole ("O'Toole") for insisting on his alleged right to be shop steward, and that Aces violated section 8(a)(3) and (1) of the Act, 29 U.S.C. § 158(a)(3) and (1), by conditioning O'Toole's employment upon his relinquishment of his claim to be shop steward. The Board ordered that Aces cease and desist from such practices and that it make O'Toole whole for losses suffered as a result of those practices.

The central issue on this appeal is whether the Board should have deferred to a prior arbitral decision. For the reasons that follow, we find that the Board should have deferred, and consequently, we deny enforcement.

### Background

In March 1982, Aces hired O'Toole as a journeyman plumber at the Dag Hammarskjold Towers project in New York City. Shortly thereafter O'Toole was appointed shop steward by Stratis Scarlatos ("Scarlatos"), the business agent of Local 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO ("the Union"). The ef-

* The Honorable Charles H. Tenney, United States Senior District Judge for the Southern District of New York, sitting by designation.

fective collective bargaining agreement required the appointment of a steward where more than four men were employed at plumbing work. The steward was to be a competent working journeyman plumber whose function was to notify the union business agent when disputes arose on the job. It was the steward's duty to insure compliance with the sanitary and safety provisions of the collective bargaining agreement. In addition, he was to work as a plumber. More particularly to the present case, the steward was to be appointed by the union business agent "from the employees on the job." If it was necessary to replace a steward, the selection was also to be made by the business agent. A steward was subject to the same rules and regulations as other journeymen but could only be removed for violation of the collective bargaining agreement or incompetency.

On September 17, 1982, O'Toole was discharged for job misconduct, including excessive drinking during working hours, unauthorized absences and lateness, being pugnacious and threatening to the job foreman and failing to perform his duties as a journeyman plumber. On September 20, 1982, the first work day after his discharge, O'Toole and the business agent Scarlatos met with the men on the job and, at Scarlatos' suggestion, the men left the job but returned the next day at the request of William Gross ("Gross"), the president of the Union.

O'Toole having filed a grievance protesting his termination, a Joint Arbitration Committee of the Plumbing Industry met to hear testimony on November 3, 1982, but the members were deadlocked and the meeting was adjourned.

Later that same day Gross called Aces's president Norman Burg ("Burg") and asked him to rehire O'Toole. Burg initially refused but Gross advised him that he was having trouble with Scarlatos, that the men would leave the job and that he could not prevent it. Gross suggested to Burg that O'Toole would come back as a working journeyman and Burg, expressing concern over Aces's liability on its performance bond if there was a strike, agreed to take O'Toole back as a working journeyman on a temporary basis pending the final arbitral determination. Burg asked Gross to tell O'Toole that he would not be the shop steward. Burg also advised the foreman and superintendent that O'Toole would return to work as a journeyman plumber but not as shop steward.

When O'Toole returned to the jobsite on November 4, 1982, the foreman advised the other plumbers that O'Toole was returning as a journeyman plumber and not as shop steward and advised O'Toole that if he felt he was still steward he would not be permitted to work. O'Toole disputed his status but was unable to reach Scarlatos so he worked the remainder of November 4 without incident.

On November 5, 1982, Scarlatos went to the jobsite and met with the superintendent who told him that O'Toole could work as a plumber but not as shop steward. When Scarlatos disputed this, O'Toole was called to the scene and shortly thereafter Burg arrived. Burg told Scarlatos that, according to Gross, O'Toole would not be shop steward pending the outcome of the arbitration. Scarlatos and O'Toole then met with the journeymen precipitating a work stoppage, lasting from November 5, 1982 to November 17, 1982, which was terminated only after legal action on Aces's behalf was commenced against the Union, Scarlatos and Gross.

While the work stoppage was in progress and on November 12, 1982, O'Toole filed a charge against Aces with the Board alleging that O'Toole was discharged on September 17, 1982 because he was engaged in protected concerted activity on behalf of the Union.

Due to the deadlock in the joint arbitration committee it was necessary for arbiters to be appointed in accordance with the collective bargaining agreement. Meetings of the three arbiters were held on February 9, 1983 and February 28, 1983, at which time they found that there was just cause for O'Toole's discharge. A final award in favor of Aces was rendered on March 7, 1983. The minutes of the meetings of Feb-

ruary 9 and 28 clearly show that the arbiters were presented with and considered evidence relating to O'Toole's return to work on November 4 and 5, 1982.

On July 9, 1984, approximately sixteen months after the award in Aces's favor, the Regional Director of the Board determined that the Board would defer to the arbitration award with respect to O'Toole's discharge on September 17, 1982. However, although O'Toole had only filed a charge with the Board relating to the September 17, 1982 discharge, it issued a complaint against Aces on July 25, 1984 based on the alleged discharge of O'Toole on November 5, 1982.

The hearing of the complaint was conducted by an Administrative Law Judge ("ALJ") who found in favor of Aces. The ALJ advanced two reasons for his decision: (1) the arbitral award of March 7, 1983 should be deferred to, and (2) the events of November 4 and 5, 1982 did not constitute a violation of section 8(a)(3) and (1) of the Act.

The Board, however, concluded (the chairman dissenting) that Aces violated section 8(a)(1) of the Act (29 U.S.C. § 158(a)(1))[1] in that it implicitly threatened O'Toole with discharge by telling him he could not continue to work if he insisted on his right to act as shop steward, and violated section 8(a)(3) and (1) of the Act (29 U.S.C. § 158(a)(3) and (1))[2] by conditioning his continued employment upon relinquishing his right to act as shop steward.

The order of the Board requires Aces to cease and desist from the unlawful conduct found and from, in any like or related manner, interfering with, restraining or coercing employees in exercise of their rights under section 7 of the Act (29 U.S.C. § 157). The order further affirmatively requires Aces to compensate O'Toole for any loss of earnings and benefits suffered as a result of its discrimination against him from November 5, 1982 until March 7, 1983.

## Discussion

■ The Board found that there was no waiver of O'Toole's "right" to be appointed shop steward in November 1982.[3] We do not reach that issue however for we find that the Board abused its discretion in refusing to defer to the arbitral decision.

The Board refused to defer to the arbitral decision after it concluded that the question before it was not "factually parallel" to the matters decided by the arbitral panel. In contrast, the ALJ had determined that the questions before the Board and the arbitral panel were "intertwined," and that the arbitral panel necessarily had decided the question of the propriety of the November 5th discharge.

In *Nevins v. NLRB*, 796 F.2d 14 (2d Cir.1986), we determined that statutory and contractual issues are "factually parallel" if the arbiters' decision on a threshold issue is such that the statutory claim cannot stand. *Id.* at 18. Here, the question decided by the arbitral panel was whether Aces had just cause to discharge O'Toole on September 17th. In light of the arbitral decision on this question—which held that O'Toole was discharged for just cause—it is clear that, according to the terms of the bargaining agreement, O'Toole was ineligible to serve as shop steward on November 5th since he was not "in good standing" as of that date.

■ We recognize that the Board enjoys wide discretion in deciding whether to defer to an earlier arbitral determination. *Liquor Salesmen's Union Local 2 v. NLRB,*

1. The statute provides that it shall be an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of their rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1).

2. In pertinent part the statute states that it is an unfair labor practice to discriminate "in regard to ... tenure of employment ... or condition of employment to encourage or discourage mem-

bership in any labor organization." 29 U.S.C. § 158(a)(3).

3. It is undisputed that the union could waive O'Toole's right to be shop steward, provided the waiver was "clear and unmistakable." *See Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983); *Chesapeake & Potomac Telephone Co. v. NLRB*, 687 F.2d 633, 636 (2d Cir.1982).

664 F.2d 318, 326 (2d Cir.1981), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed. 2d 847 (1982). The enforceability of an NLRB order hinges on whether its decision constituted an abuse of administrative discretion. *NLRB v. New York University Medical Center*, 702 F.2d 284, 288 (2d Cir. 1983), *judgment vacated on other grounds*, 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 73 (1983). Although the Board may modify its internal guidelines, it cannot irrationally apply them.

■ The Board's most recent articulation of the standard to be applied in determining whether the Board should defer to an arbitration panel is set forth in *Olin Corp.*, 268 N.L.R.B. 573 (1984). The Board will defer if (1) the proceedings were fair, (2) all parties had agreed to be bound, (3) the legal conclusions were consistent with the goals of the Act, and (4) the statutory issues were factually parallel to the contractual issue. *Id.* at 573–74. This formulation reflects the inherent conflict between the Board's policy of remedying unfair labor disputes and the encouragement of settling grievances through collective bargaining.

The ALJ applied the *Olin* test to the facts of the present case and concluded that deferral was appropriate. When analyzing the case, the ALJ took into account that the policy of the Board is to require the party opposing deferral to unmask the defects in the arbitration proceeding. *Altoona Hospital*, 270 N.L.R.B. 1179 (1984). The ALJ found that the issue of the November dismissal "is so intertwined with the original discharge of O'Toole on 17 September, that the arbitration proceeding that resulted from the earlier discharge could not help but discuss later events including the 5 November incident." Appendix ("App.") at 39.

The ALJ's interpretation of the *Olin* test as applied to this case was reasonable. The minutes of the February 9 hearing state that O'Toole "was offered a job as a journeyman but insisted he was still the steward. The Business Agent told the men not to work without a steward. The men left the job." *Id.* Furthermore, the min-

utes of the February 28 hearing state "[i]t was Mr. O'Toole's understanding he was back as a steward but the foreman said no, you work as a journeyman. The Business Agent met with the contractor, Mr. Norman Burg, who stated that if it was Mr. O'Toole's intent to be the steward he didn't want him back, and Mr. O'Toole left the job." *Id.* Thus, the arbiters were presented with evidence on the issue of the November 5 dismissal, and their decision effectively decided the issue. *Chemical Leaman Tank Lines, Inc.*, 270 N.L.R.B. 1219, 1219–20 n. 3 (1984).

The Board claims that since the arbitral award did not specifically refer to the November 5 dismissal, this shows the issues were different. To the contrary, as long as the facts were presented to the arbiters, the omission of a reference to the November 5 discharge does not preclude a finding of factually parallel issues if there is no express statement to the contrary. *Ryder Truck Lines, Inc.*, 273 N.L.R.B. 713 (1984); *Yellow Freight Systems, Inc.*, 273 N.L.R.B. 44 (1984). Accordingly, we find that the criteria set forth in *Olin* have been met.

Moreover, the Board has failed to enunciate sufficiently its reasons for rejecting the ALJ's determination. The Board noted that although the arbiters were presented with the facts relevant to the November 5 discharge, "it does not mean the issues are factually parallel when they clearly are not." App. at 20. It is a fundamental principle of administrative law that the Board must furnish reasons for its decision. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197, 61 S.Ct. 845, 853–54, 85 L.Ed. 1271 (1941). When applied to this case, the principle requires that the Board refer to specific facts inconsistent with the ALJ's finding. The Board's decision leaves ambiguous why the ALJ's determination was rejected.

## Conclusion

For the reasons we have articulated, we rule that the Board's order was an abuse of discretion. The NLRB's petition for en-

forcement is denied; Aces's cross-petition is granted.