**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOLYOKE WATER POWER COMPANY, Respondent.**

**Local 455, International Brotherhood of Electrical Workers, AFL–CIO, Intervenor.**

No. 85–1226.

United States Court of Appeals, First Circuit.

Argued Sept. 11, 1985.

Decided Nov. 27, 1985.

Linda Dreeben with whom Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., were on brief for petitioner.

Jason Berger, P.C. with whom Peabody & Brown, Boston, Mass., was on brief for respondent.

James O. Hall, Boston, Mass., for intervenor.

Donald R. Crowell, II, Linda E. Rosenzweig, Pepper, Hamilton & Scheetz, Stephen A. Bokat and Nat. Chamber Litigation Center, Inc., Washington, D.C., on brief for Chambers of Commerce of the United States, Amicus Curiae.

Michael H. Gottesman, Jeremiah A. Collins, David M. Silberman, Laurence Gold and Laurence Cohen, Washington, D.C., on brief for American Federation of Labor and Congress of Indus. Organizations, Amicus Curiae.

Before COFFIN, Circuit Judge, ALDRICH, Senior Circuit Judge, and WISDOM,* Senior Circuit Judge.

WISDOM, Senior Circuit Judge:

The issue in this case is whether an employer must allow a non-employee union representative into its plant to measure noise levels in a particularly noisy room. We conclude that the union's representative is entitled to access to the room.

## I.

Holyoke Water Power Company operates the Mt. Tom power plant. One room of the plant contains two large fans that force air into the plant's burners. This "fan room" is extremely noisy. The company has posted a notice that hearing protection must be worn in the fan room, and provides ear

* Of the Fifth Circuit, sitting by designation.

protectors for that purpose. No one is stationed in the fan room, although employees must enter it to perform maintenance and repair work.

During 1981 and 1982, the Mt. Tom Plant began burning coal instead of oil. Prior to the conversion, the fans ran at full speed about sixty percent of the time. They now run at full speed about ninety-five percent of the time. The union, which represents the company's production and operations employees, sent an industrial hygienist into the plant to survey possible hazards created by the conversion to coal. The hygienist requested access to the fan room. When the company refused the request, the union filed an unfair labor practice charge. The Board ruled in favor of the Union. 273 N.L.R.B. No. 168 (Jan. 11, 1985). It now petitions for enforcement of the order.

### II.

Prior to this case, the Board treated union requests for access to an employer's property to obtain health and safety information as simple requests for information. *See Winona Industries,* 257 N.L.R.B. 695 (1981). The Supreme Court has held that employers must "provide information that is needed by the bargaining representative for the proper performance of its duties". *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967). Safety and health conditions are conditions of employment about which employers must bargain upon request, and are therefore within the scope of the bargaining representative's duties. *See Oil, Chemical & Atomic Workers Local Union No. 6–418 v. NLRB,* 711 F.2d 348, 360 (D.C.Cir.1983). The union, however, is not invariably entitled to enter the employer's plant to obtain information. "A union's bare assertion that it needs information ... does not automatically oblige the employer to supply all the information in the manner requested." *Detroit Edison*

Co. v. NLRB, 440 U.S. 301, 314, 99 S.Ct. 1123, 1130, 59 L.Ed.2d 333 (1979). The information must be relevant to the union's duty to represent its members. *See Emeryville Research Center v. NLRB,* 441 F.2d 880, 883 (9th Cir.1971). "When the employer presents a legitimate, good faith objection on grounds of burdensomeness or otherwise, and offers to cooperate with the union in reaching a mutually acceptable accommodation, it is incumbent on the union to attempt to reach some type of compromise with the employer as to the form, extent, or timing of disclosure." *Soule Glass and Glazing Co. v. NLRB,* 652 F.2d 1055, 1098 (1st Cir.1981).

We agree with the Administrative Law Judge's conclusion, approved by the Board, that the company was required to grant the hygienist access under *Winona.* The information sought by the union clearly was relevant to the union's statutory duty to bargain about conditions of employment[1]. The record shows that even short exposures to high levels of noise can cause loss of hearing, stress, hypertension, nervousness, or irritability. Although union employees are not permanently stationed in the fan room, they enter it regularly and may remain inside for a full day. The company argues that the information is irrelevant because employees did not raise the issue with the company. The union's right to information, however, "is not dependent upon the existence of some particular controversy or the need to dispose of some recognized problem". *Oil, Chemical & Atomic Workers,* 711 F.2d at 361. Moreover, at least two employees complained to the union about the noise level in the fan room. The information is not irrelevant merely because the company has posted a warning outside the fan room and provided hearing protection for employees. One witness testified that the company's ear protectors have a tendency to slip off when worn over hardhats. We agree, moreover, that "the proposition that a un-

---

**1.** Information bearing on conditions of employment, including plant noise levels, may be presumptively relevant. *Press Democrat Publishing*

Co. v. NLRB, 629 F.2d 1320, 1324 (9th Cir.1980). We need not, and do not, decide that question today.

ion must rely on an employer's good intentions concerning the vital question of health and safety of represented employees seems patently fallacious". 711 F.2d at 361. Finally, the fact that the union might have raised the issue earlier, but did not, does not render the information it requests irrelevant.[2]

We agree with the Board's conclusion that the company failed to provide the union with the information it needed. One company study measured the average noise levels to which individual employees were exposed as they moved about the plant during an eight-hour period. The union is interested in noise levels in the fan room alone. A second company study, made after the union's complaint was filed by a company employee who is not an industrial hygienist, did measure noise levels in the fan room. The results of this study may have been affected by the exact location of the measuring apparatus and by the positioning of doors and louvers. The union expert's recommendations, moreover, are based in part on direct observation of employee work patterns. In short, we agree with the Board's finding that the noise measurements requested by the union have an inherently subjective component, so that the union reasonably insisted on obtaining access for its own hygienist.

█ The company argues that in these circumstances the union was obliged to pursue other means of obtaining the information it sought before filing an unfair labor practice charge. We disagree. The company flatly refused to provide the union's hygienist with access to the fan room. In our view, the union reasonably concluded that no other source of information was adequate. In any event, the company did not offer to provide any information until

after the unfair labor practice charge had been filed. The union reasonably concluded that it could not obtain the information without an order from the Board.

### III.

The Board reached the same result by a different route. It rejected the *Winona* test, and instead balanced the Union's interest in obtaining access against the Company's interest in preventing an invasion of its property. The Supreme Court first adopted this balancing approach to handle requests for access by non-employee union organizers who are likely to disrupt the employer's operations. *See NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956). *Babcock & Wilcox* and its progeny do not obviously govern this case. The balancing cases typically arise out of union requests for access posing a significant threat to the employer's rights. In *Hudgens v. NLRB*, for example, non-employees asserted a right to picket on the employer's property. 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). Clearly the potential for disruption is not as great where, as here, the union already represents the employees, and seeks access only to study a possible threat to the health and safety of its members.

*Babcock & Wilcox*, moreover, discusses the employer's duty to refrain from interfering with protected employee activities. 351 U.S. at 109, 112, 76 S.Ct. at 684. That duty is imposed by § 8(a)(1) of the National Labor Relations Act. This case, by contrast, is based on the employer's affirmative duty to bargain under §§ 8(a)(5) and 8(d) of that Act. Less weight may be due the employer's property rights when the employer is subject to a duty to bargain.

---

2. Similarly, the fact that the Occupational Safety and Health Administration has promulgated a noise standard, *see* 29 C.F.R. § 1910.95, does not make the requested information irrelevant. The union is entitled to bargain for a standard that exceeds the one established by OSHA. Although the union could have obtained the results of noise studies on file with OSHA under 29 C.F.R. § 1910.20, OSHA measurements may be subject to the same defects as measurements made by the employer. Moreover, the Board has held that the union's right to obtain information from the employer is not affected by the availability of the information from other sources absent special circumstances. *See Colgate-Palmolive Co.*, 261 N.L.R.B. 90, 92 n. 13 (1982).

The choice between *Winona* and a balancing test is not crucial in a situation such as the one presented in this case. The National Labor Relations Act requires the Board to resolve conflicts between § 7 rights and property rights and to seek accommodation of those rights "with as little destruction of one as is consistent with the maintenance of the other". *Babcock & Wilcox*, 351 U.S. at 112, 76 S.Ct. at 684. The Supreme Court has said that "[t]he locus of that accommodation ... may fall at differing points along the spectrum depending on the nature and strength of the respective § 7 rights and private property rights asserted in any given context". *Hudgens v. NLRB*, 424 U.S. at 522, 96 S.Ct. at 1037. If the union's interest in obtaining information is substantial, and the employer's interest in keeping union representatives off its property is insignificant, both *Winona* and a balancing test point to the same result.

Because we agree with the Board that the outcome in this case is the same under either test, we need not decide whether the general balancing formula of *Babcock & Wilcox* applies to requests for access by unions that already represent the employees. While the outcome necessarily is closer under a balancing test than under *Winona*, the company's interest in denying access in this case appears to be insubstantial. The potential for disruption is not great, since the union already represents the employees. The industrial hygienist's investigation will last a day or less. Since no employees are regularly stationed in the fan room, the hygienist will not disrupt employee work patterns.

The company suggests that a remand would allow it to develop the property interests at stake. Under *Winona*, the company was free to argue that allowing access would cause it undue hardship or inconvenience, or interfere with its business operations. *See Soule Glass and Glazing Co. v. NLRB*, 652 F.2d at 1098–99. We think this afforded the company a sufficient opportunity to develop its property interests.

The Board's petition for enforcement of its order is GRANTED.