**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**NATIONAL BROADCASTING COMPANY, INC., Respondent,**

**Directors Guild of America, Inc., Intervenor.**

**No. 1287, Docket 86–4012.**

United States Court of Appeals, Second Circuit.

Argued May 8, 1986.

Decided Aug. 14, 1986.

Donald W. Savelson, Washington, D.C. (Proskauer Rose Goetz & Mendelsohn, Washington, D.C. and Irving Brand, New York City, of counsel), for respondent.

Allen Ferguson, Washington, D.C. (W. Christian Schumann, Rosemary M. Collyer, John E. Higgins, Jr., Robert E. Allen and Elliott Moore, Washington, D.C., of counsel), for petitioner.

Linda G. Bartlett, New York City (John A. Connor, New York City, of counsel), for intervenor.

Before VAN GRAAFEILAND, KEARSE and MINER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

The National Labor Relations Board petitions for enforcement of an unfair labor practice order directing the National Broadcasting Company (NBC) to cease and desist from denying representatives of the Directors Guild of America (the Union) access to remote broadcasting facilities at reasonable times and places in order to police NBC's compliance with the terms of a collective bargaining agreement between the Union and NBC. We grant the petition.

NBC televises most sporting events from remote, as opposed to studio, broadcasting sites. The remote broadcasts usually are supervised from a trailer, approximately eight by forty feet, which contains television monitors and other necessary equipment. The broadcast personnel in the trailer generally consist of a producer, who is in overall charge of the facility, a director and an assistant director, who are Union members, and various technical and subordinate employees. The dispute between the Union and NBC originated in the Union's contention that producers, non-unit employees, were doing union work properly assigned to the directors and assistant directors, by "cueing" technical personnel in the performance of certain broadcast functions. Alleged violations of this nature during a 1981 golf tournament in California formed the basis for a grievance against NBC, which was to be arbitrated shortly after the instant proceedings.

In preparation for the California arbitration, the Union decided to have a representative visit an NBC broadcast from a golf tournament at Bay Hill, Florida, to observe whether contract violations were taking place there. However, upon inquiry of NBC, the representative was told that he would not be admitted to the "cramped quarters" of the truck while play was being broadcast or taped for broadcast.

NBC's position was that there were Union members present during the broadcast who could report violations to the Union. The Union's position, on the other hand, was that, since the directors were assigned remote control work on a freelance or non-contract basis, they would be reluctant to antagonize their employer by complaining to the Union. Accordingly, the Union instructed its representative to proceed to Bay Hill.

When the representative arrived at the golf course, the occupants of the NBC trailer were taping tournament play for later broadcast. Seeing no one outside the trailer, the representative entered it. His intrusion apparently went unnoticed until he was paged approximately one hour later. At that point, NBC's Vice President of Technical Operations asked him to leave the trailer. When the representative sought admission on the next broadcast day, he was denied access to the NBC facilities while they were in operation.

The Union filed an unfair labor practice charge, alleging that NBC's denial of access violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5). The Administrative Law Judge ruled that NBC's conduct constituted an unfair labor practice. He stated that NBC's past practice of permitting Union representatives unrestricted access to their unit members' workplaces had ripened into a contractual right of access which NBC could not change unilaterally. Alternatively, applying the balancing test of *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), he held that the Union's need for the information outweighed NBC's right to control access to its private property. The ALJ found that the information sought by the Union was relevant to the Union's function as bargaining agent for its employees, and that firsthand observation of the broadcast crew at work was the only way the Union could gather that information. He rejected as insufficient the alternatives to access offered by NBC. He said that unidentified vocal commands and hand-cueing signals

could not be monitored adequately from outside the trailer. He agreed with the Union that it could not rely on whistle-blowing by its "freelancing" director members. Finally, he concluded that Union access limited to the times when no employees were working was no useful access at all. The ALJ ordered NBC to give Union representatives unlimited access to its remote facilities for the purpose of policing and enforcing its collective bargaining agreement.

Upon appeal by NBC, the Board disagreed with the ALJ's finding that NBC had a longstanding practice of permitting Union representatives unlimited access to its remote facilities which had ripened into a contractual right. However, it affirmed the unfair labor practice determination by applying the balancing test of *Holyoke Water Power Co.*, 273 N.L.R.B. 168, *enf'd on other grounds*, 778 F.2d 49 (1st Cir.1985), which, it said, "seeks to accommodate both the employer's common law right to control its property and the employees' statutory right to proper representation by their union." That test was summarized in *Holyoke* as follows:

> Where it is found that responsible representation of employees can be achieved only by the union's having access to the employer's premises, the employer's property rights must yield to the extent necessary to achieve this end. However, the access ordered must be limited to reasonable periods so that the union can fulfill its representation duties without unwarranted interruption of the employer's operations. On the other hand, where it is found that a union can effectively represent employees through some alternative means other than by entering on the employer's premises, the employer's property rights will predominate, and the union may properly be denied access.

NBC does not quarrel with the "reasonable times and places" requirement; it contends that it complied with that requirement and that the Union did not need the information it sought. The Union, al-though urging enforcement of the Board's order, argues that the order did not go far enough; that it should have directed that access be granted unless the employer showed that this would cause disruption of its operations.

Our power of review is limited. Congress has committed to the NLRB the difficult and delicate responsibility of balancing conflicting legitimate interests in labor policy. *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978). "When the Board's construction of the Act 'is an acceptable reading of the statutory language and a reasonable interpretation of the purposes of the relevant statutory sections', its decision will not be overturned". *Local 259, United Automobile, Aerospace and Agricultural Implement Workers of America v. NLRB*, 776 F.2d 23, 26 (2d Cir.1985) (quoting *NLRB v. Local Union No. 103, International Association of Bridge, Structural & Ornamental Ironworkers*, 434 U.S. 335, 341, 350, 98 S.Ct. 651, 655, 660, 54 L.Ed.2d 586 (1978)).

■ We are satisfied that the NLRB's application of the *Holyoke Water Power Co.* balancing test to the facts presented here is rationally consistent with the provisions of the National Labor Relations Act and that the Board's decision is supported by substantial evidence on the record as a whole. The information sought by the Union was relevant not only to the pending arbitration but also to the continued enforcement of the bargaining agreement. *See NLRB v. Acme Industrial Co.*, 385 U.S. 432, 436–38, 87 S.Ct. 565, 568–69, 17 L.Ed.2d 495 (1967). Evidentiary concessions allegedly made by NBC did not obviate the need for the proof of contractual breach which the Union sought. The Board weighed the alternatives to ordering access to NBC's property and concluded that none was sufficient to serve the Union's legitimate purpose. However, in deference to NBC's interests in controlling its private property and the operation of its worksites, the Board narrowed the ALJ's order so as to limit access to "reasonable

times and places". We find no fault with the NLRB's resolution of the parties' competing interests. It accommodates the interests of both the Union and the employer "with as little destruction of one as is consistent with the maintenance of the other." *NLRB v. Babcock & Wilcox, supra,* 351 U.S. at 112, 76 S.Ct. at 684.

■ NBC also challenges the Board's refusal to reopen the record to admit evidence that one of the Union's "freelancing" directors testified on behalf of the Union in an arbitration proceeding involving a claim against NBC similar to the claim in the instant case. This allegedly took place some three weeks after the hearing in the instant case was closed and approximately a month before the Union filed its brief with the ALJ claiming it could get no cooperation from its director-members.

Although we are more offended than persuaded by the Union's ambiguous, and therefore potentially misleading, statement that "[a] witness may answer a subpoena but not come forward with a notice of a violation", (Union Brief at 32) we conclude nonetheless that the denial of NBC's motion does not require a remand. Over two years elapsed between the time the additional evidence became available and the making of the motion, and NBC made no effort to explain the delay, as required by Board rules. *See* 29 C.F.R. § 102.48(d)(1); *NLRB v. Jacob E. Decker and Sons,* 569 F.2d 357, 365 (5th Cir.1978). Moreover, it is doubtful that the admission of the evidence would have led to a different result. *See* 29 C.F.R. § 102.48(d)(1).

The petition for enforcement is granted.