ASARCO, INCORPORATED, TENNESSEE MINES DIVISION, Petitioner, Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner,

International Chemical Workers Union and its Local 700, Intervenor.

Nos. 85–5987, 85–6140.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 18, 1986.

Decided Nov. 14, 1986.

Wheeler A. Rosenbalm (argued), Knoxville, Tenn., for petitioner.

Russell M. Pry, International Chemical Workers Union, Akron, Ohio, for intervenor.

Elliott Moore, Deputy Associate Gen. Counsel, NLRB, Washington, D.C., Allen Freguson (argued), John Elligers, Martin M. Arlook, Director, NLRB—Region 10, Atlanta, Ga., for respondent.

Before KENNEDY and MARTIN, Circuit Judges; and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This case is before the court on the application of ASARCO, Inc., to set aside the decision and order of the National Labor Relations Board (the Board) which found that ASARCO violated §§ 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5).[1] The violations were based on ASARCO's refusal to give an industrial hygienist employed by the International Chemical Workers Union (the Union) access to its mine for the purpose of investigating a fatal accident, ASARCO's denial of the Union's request for photographs taken of the accident site, and ASARCO's failure to give the Union copies of its internal investigative accident report. For reasons stated herein, we grant enforcement of the Board's order in part, and set aside the order in part.

On July 31, 1984, Wade Fields, an ASARCO employee and member of the Union's Local 700, with which ASARCO has a collective bargaining agreement, apparently drove a tractor off a bench of ore materials and over an abrupt 30–foot drop-off inside ASARCO's Young Mine, an underground

---

1. These sections provide:
 (a) It shall be an unfair labor practice for an employer—
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

 . . . . .
 (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

zinc mine. Co-workers found Fields after the accident to which there were no eye-witnesses. Fields died hours later on August 1, 1984.

ASARCO's safety director, Donald Ledbetter, immediately reported the accident to the Federal Mine Safety and Health Administration (MSHA). That same day an inspection team extensively investigated the accident site. The team included ASARCO representatives, the MSHA official, and Thales Miller, a member of Local 700 and its safety committee. After the on-site investigation, at which ASARCO took photographs, MSHA directed ASARCO to move the tractor to its shop area for inspection and gave ASARCO permission to clean up the accident site. The tractor was closely examined by the MSHA official, as well as by Ray Gann, the Local 700 president, and Dennis Gann, another member of the Local and its safety committee. Following this, MSHA, ASARCO, and Union representatives interviewed employees who had worked on Fields' shift.

On August 2, 1984, the Union requested permission for the Union's industrial hygienist, Thurman Wenzl, to visit the accident site. ASARCO denied this request. ASARCO did agree to the Union's subsequent request that ASARCO representatives meet with Wenzl and other Union officials to discuss the accident.

At this meeting, which followed MSHA's "closeout" conference attended by the Union, ASARCO representatives again denied the Union's request for access. The Union also requested copies of the photographs taken of the accident site. ASARCO advised the Union that the photographs would be given to the MSHA. Upon learning at the meeting that ASARCO planned to prepare its own internal investigative report of the accident, the Union requested a copy of the report. ASARCO never fulfilled the Union's request. The Union did receive a copy of the MSHA accident investigation report. The record reflects that ASARCO otherwise cooperated with the Union in answering questions about the accident.

The Union filed unfair labor practice charges alleging that ASARCO violated §§ 8(a)(1) and (5) of the Act by refusing the Union's requests for access and information. After an evidentiary hearing, the administrative law judge (ALJ) found that ASARCO had violated the Act. By decision and order dated March 14, 1985, the ALJ ordered ASARCO to grant access to the Union hygienist and to turn over its photographs and internal investigative report. A three-member panel of the Board affirmed the ALJ's decision and adopted the ALJ's order as its own. ASARCO's petition for review followed. The Board filed a cross-petition for enforcement of its order. The Union has intervened.

■ On review the Board's findings of fact will be upheld if they are supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). The Board's application of the law to particular facts is also reviewed under the substantial evidence standard. The Board's reasonable inferences may not be displaced on review even though the reviewing court might have reached a different conclusion had it considered the matter *de novo. NLRB v. United Insurance Co. of America*, 390 U.S. 254, 260, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968); *Universal Camera*, 340 U.S. at 488. Furthermore, the court must give deference to the Board's determinations regarding the employer's duty to provide requested information to the Union. *E.I. DuPont de Nemours & Co. v. NLRB*, 744 F.2d 536, 538 (6th Cir.1984); *Salt River Valley Water Users' Association v. NLRB*, 769 F.2d 639, 641–42 (9th Cir.1985); *Oil, Chemical and Atomic Workers Local Union No. 6–418 v. NLRB*, 711 F.2d 348, 360 (D.C.Cir.1983); *NLRB v. Jaggars-Chiles-Stovall, Inc.*, 639 F.2d 1344, 1347 (5th Cir.), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 100 (1981). With these standards of review in mind, we turn to the merits of the case.

**The Union's Request for Access**

The Board applied the balancing test set forth in *Holyoke Water Power Co.*, 273 NLRB 1369, *enforced sub nom. NLRB v. Holyoke Water Power Co.*, 778 F.2d 49 (1st Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 3274, 91 L.Ed.2d 565 (1986), in determining that ASARCO should have granted the Union's industrial hygienist access to the accident site. Under *Holyoke* the Board:

> balance[s] the employer's property rights against the employees' right to proper representation. Where it is found that responsible representation of employees can be achieved only by the union's having access to the employer's premises, the employer's property rights must yield to the extent necessary to achieve this end. However, the access ordered must be limited to reasonable periods so that the union can fulfill its representation duties without unwarranted interruption of the employer's operations. On the other hand, where it is found that a union can effectively represent employees through some alternate means other than by entering on the employer's premises, the employer's property rights will predominate, and the union may properly be denied access.

273 NLRB at 1370. The *Holyoke* standard is drawn from *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956), which balances the § 7 rights of self-organization[2] that are implicated by access requests of non-employee union organizers against the employer's interest in preventing invasion of its private property rights. In *Holyoke* the Board also expressly overruled an earlier

line of cases, including *Winona Industries, Inc.*, 257 NLRB 695 (1981), in which the Board treated requests for access as simple information requests. 273 NLRB at 1370. It is well settled that "[t]he duty to bargain collectively, imposed upon an employer by § 8(a)(5) of the National Labor Relations Act, includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative." *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 303, 99 S.Ct. 1123, 1125, 59 L.Ed.2d 333 (1979) (citations and footnote omitted). In evaluating an employer's obligation to fulfill the union's information requests, the Board and courts apply a "discovery type standard," under which the requested information need only be relevant and useful to the union in fulfilling its statutory obligations in order to be subject to disclosure. *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 437, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967); *General Motors Corp. v. NLRB*, 700 F.2d 1083, 1088 (6th Cir.1983).

■ ASARCO argues that the Union could satisfy its representation duties and accompanying need for information relevant to Field's accident and the safety issues raised thereby through means other than mine access—notably, the MSHA report and interviews with Union representatives who participated in the on-site investigation. In light of these alternate sources of relevant information, ASARCO contends that the Union did not meet the *Holyoke* test for access to employer property.[3]

■ On the other hand, the intervenor Union asks this court to enforce the Board's order, but under the more liberal standard set forth in *Winona*, 257 NLRB

---

**2.** Section 7 provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . .
29 U.S.C. § 157.

**3.** ASARCO also asserts on appeal that the Federal Mine Safety & Health Act, 30 U.S.C. § 801 *et*

*seq.*, which provides for safety inspections and accident investigations, preempts any right to inspection the Union might otherwise have. ASARCO did not raise this issue before the Board. Under § 10(e) of the Act, 29 U.S.C. § 160(e), "[n]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." We, therefore, decline to consider this argument.

at 697–98. The Union argues that *Holyoke* is flawed and should be overruled because it is premised upon *Babcock & Wilcox, supra,* which deals with § 7 rights of self-organization and the employer's duty under § 8(a)(1) to refrain from interfering with those rights and does not involve the employer's affirmative duty under § 8(a)(5) to bargain with the employer's representative. Because the outcome in this case is the same under either test, we decline to decide whether *Winona* or *Holyoke* is the proper test to be applied in situations involving the bargaining representative's request for access to employer property in order to gather information relevant to its representative responsibilities. As noted by the First Circuit in *Holyoke,* "[i]f the union's interest in obtaining information is substantial, and the employer's interest in keeping union representatives off its property is insignificant, both *Winona* and a balancing test point to the same result." 778 F.2d at 53. Employee safety, as a condition of employment, is a mandatory subject of collective bargaining. *Oil, Chemical & Atomic Workers Local Union,* 711 F.2d at 360. In addition, the collective bargaining agreement between ASARCO and the Union stated that the Union agreed "to cooperate and help management in the promotion of safety and the enforcement of safety rules and regulations;" the agreement also established a safety committee composed of union and management representatives whose function was "to make recommendations to management on accident prevention." The information regarding the fatal accident sought by the Union in this case was therefore clearly relevant and necessary to its duties as bargaining representative. ASARCO gave no reason for its flat refusal to permit the Union's industrial hygienist into the mine, nor did it attempt to strike a mutually acceptable compromise that would answer ASARCO's concerns later articulated before the ALJ regarding disruption of work and productivity. Finally, ASARCO's safety director Ledbetter conceded on cross-examination that without actually going through the mine one could not conduct a fair and complete investiga-

tion of the accident. On these facts, we agree with the Board's findings that absent access to the accident site the Union could not fulfill its obligation to represent the employees. We therefore enforce the portion of the Board's order which grants access to the Union's industrial hygienist to the mine and accident site for a reasonable period and at a reasonable time.

### The Request for Photographs

■■■ The Union's request for photographs must also be upheld. On appeal ASARCO does not contest the Board's finding that the photographs constituted information that was relevant and necessary to the Union's understanding of the accident and its duty to represent the employees with regard to safety conditions. ASARCO contends that it had no legal obligation to take the photographs in the first instance and therefore should be under no compulsion to give the "fruits of its investigation" to the Union now. This position is patently unsupportable, as perhaps is indicated by ASARCO's failure to cite any cases in support of its argument. Indeed, the case law is replete with instances in which employers have had the duty under § 8(a)(5) to give bargaining representatives data compiled voluntarily and for the employers' own purposes. ASARCO's other argument is that the Union could have obtained the photographs from the MSHA, so that it had no legal duty to supply them. However, the availability of the requested information from another source does not alter the employer's duty to provide readily available relevant information to the bargaining representative. *Holyoke,* 778 F.2d at 52 n. 2; *Colgate-Palmolive Co.,* 261 NLRB 90, 92 n. 13 (1982), *enforced sub nom. Oil, Chemical & Atomic Workers Local Union No. 6-418 v. NLRB, supra; Kelly-Springfield Tire Co.,* 266 NLRB 587, 593–94 (1983). Accordingly, we enforce the portion of the Board's order which requires ASARCO to give the Union the requested photographs of the accident site.

**The Request for ASARCO's Internal Investigative Report**

 The appeal regarding the portion of the Board's order requiring disclosure of ASARCO's internal self-critical report presents a more difficult question. The Board was unable to cite, and we are unable to find, any prior case in which such a report was ordered to be disclosed. The Board argues that since the report would be subject to disclosure under federal discovery rules, ASARCO's report should also be disclosed pursuant to the "discovery-type standard" for disclosure in § 8(a)(5) cases. *See Acme*, 385 U.S. at 437, 87 S.Ct. at 568; *NLRB v. Rockwell-Standard Corp.*, 410 F.2d 953, 958 (6th Cir.1969). Although a liberal discovery-type standard is used in information request cases to determine relevance, this does not mean that anything that would be discoverable in litigation is automatically subject to disclosure in the collective bargaining context. Rather, relevance and any resulting duty to disclose must be evaluated in light of the rights and obligations created by the National Labor Relations Act.[4]

The uncontradicted testimony of ASARCO's safety director Ledbetter established that ASARCO prepares extensive self-critical reports after serious accidents in order to improve safety and prevent future similar mishaps. The reports contain speculative material and opinions, criticisms of persons, events, and equipment, and recommendations for future practices. Ledbetter stated that if ASARCO were required to divulge these reports to the Union, much of their contents would have been omitted, adversely affecting, if not nullifying, the report's value. Ledbetter testified that ASARCO also prepares these reports in anticipation of litigation which frequently arises after serious accidents.

The ALJ, as affirmed by the Board, concluded that ASARCO's internal report was not prepared in anticipation of litigation and should be disclosed because no lawsuit was pending at the time of the Union's request and because, in the ALJ's view, the record failed to establish that the report would not have been prepared in the complete absence of the possibility of some liability for the accident. The ALJ gave no weight to ASARCO's other argument that disclosure of the self-critical analysis would seriously affect the candor of future critiques and have a chilling effect that would defeat the critique's primary purpose. Although the ALJ gave lip service to the settled principle that the Union's need for information must be balanced against legitimate confidentiality interests of the employer, *see Detroit Edison*, 440 U.S. at 314–15, 99 S.Ct. at 1130–31; *Oil, Chemical & Atomic Workers Local Union*, 711 F.2d at 360, in actuality he summarily concluded that, because the report was not prepared in anticipation of litigation, the Union's right to the information was thereby established. We cannot sustain this conclusion.

 As stated above, the employer's duty to bargain collectively in good faith under § 8(a)(5) includes the obligation to supply information requested by the union that is relevant and necessary to the proper performance of its statutory duties as the bargaining representative. *Detroit Edison*, 440 U.S. at 303, 99 S.Ct. at 1125; *Oil, Chemical & Atomic Workers Local Union*, 711 F.2d at 358–60; *General Motors*, 700 F.2d at 1088. However, "[a] union's bare assertion that it needs information ... does not automatically oblige the employer to supply all the information in the manner requested." *Detroit Edison*, 440 U.S. at 314, 99 S.Ct. at 1131. The union's interest in arguably relevant information does not always predominate over other legitimate interests. *Id.* at 318, 99 S.Ct. at 1132.

The ability of an employer to engage in self-critical analysis and speculation unhindered by concern that such material will be disclosed to the Union is a substantial, legitimate interest. In this connection we find persuasive the reasoning of the Dis-

---

**4.** To the extent that *Rockwell-Standard*, which states "the standards of discovery procedures under the Federal Rules of Civil Procedure should be applicable to union requests for information," 410 F.2d at 958, can be read to imply otherwise, we accordingly modify it.

trict of Columbia Circuit in *International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC v. NLRB*, 648 F.2d 18 (D.C.Cir.1981). In that case the court enforced the Board's order that General Motors and Westinghouse need not give the union their affirmative action plans (AAPs). Emphasizing that "the employers' future plans, goals, or commitments [are] reflected in AAPs," it was stated that:

> The interest a union might have in an employer's AAPs must be balanced with the desirability of confidential, frank self-analysis on the part of the employer. An employer's self-analysis, often including admissions and desirably candid self-criticism, is necessarily chilled by a foreknowledge that the results of that analysis must be disclosed to the union representing its employees and might then be disclosed to its competitors and others if the union sues the employer or otherwise elects to publicize the analysis.

*Id.* at 28.

The Board also appears to have accepted this principle that a chilling effect on a substantial interest is a legitimate concern which militates against disclosure. In determining that an employer has no duty under § 8(a)(5) to disclose witness statements taken as part of its investigation of employee altercations which resulted in disciplinary action, the Board stated that "[w]itness statements ... are fundamentally different from the types of information contemplated in *Acme [supra],* and disclosure of witness statements involves critical considerations which do not apply to requests for other types of information.... [W]itnesses may be reluctant to give statements absent assurances that their statements will not be disclosed.... [R]equiring either party to a collective bargaining relationship to furnish witness statements to the other party would diminish rather than foster the integrity of the ... process." *Anheuser-Busch, Inc.,* 237 NLRB 982, 984 (1978). *See Ohio Medical Products,* NLRB Gen. Counsel Advice Memo., Case No. 30–CA 7635, 113 LRRM 1087, 1088 (1983). In both *International Union*

*of Electrical, Radio & Machine Workers,* 648 F.2d at 24–28, and *Anheuser-Busch,* 237 NLRB at 984 n. 4, the Union already possessed or was given access by the Board's order to the relevant factual data from which it could properly represent the employees' interests.

 In this case the Board's position ignores the evidence that ASARCO's self-critical report is part of its effort to avoid future similar accidents. The practice of uninhibited self-critical analysis, which benefits both the union's and employer's substantial interest in increased worker safety and accident prevention, would undoubtedly be chilled by disclosure. As in *International Union of Electrical, Radio & Machine Workers, supra,* and *Anheuser-Busch, supra,* disclosure would seriously thwart the intended primary purpose of the document to the ultimate detriment of both parties' interests. The Board's position also ignores that the Union has available to it all relevant factual information regarding the accident by virtue of its extensive participation in the accident investigation with ASARCO officials and by virtue of the portions of the Board's order granting mine access and delivery of the photographs. Under these circumstances, access to ASARCO's internal report and self-critical thinking is not relevant or reasonably necessary to the Union's representative duties, and ASARCO's failure to disclose it was not a § 8(a)(5) violation. Because we deny enforcement of this portion of the Board's order on this basis, we need not consider ASARCO's other argument that the report should be shielded because it was prepared in anticipation of litigation.

In accordance with the foregoing, the portions of the Board's order granting mine access to the Union's hygienist at a reasonable time and in a reasonable manner and giving the Union the photographs are upheld. Enforcement of the portion of the Board's order giving the Union ASARCO's internal report is denied.