

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-28-1997

# Hertz Corp. v. NLRB

Precedential or Non-Precedential:

Docket 95-3621

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Hertz Corp. v. NLRB" (1997). *1997 Decisions*. Paper 19.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/19

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-3621

_____

HERTZ CORPORATION,

                                        Petitioner
                v.

NATIONAL LABOR RELATIONS BOARD,

                                        Respondent.

_____

On Petition for Review of an Order of the National Labor
Relations Board , United States Department of Labor
(NLRB No. 5-CA-23956)

_____

Argued June 11, 1996

Before: SCIRICA and ROTH, Circuit Judges
        and RESTANI[1], Judge, U.S. Court of International Trade

(Opinion Filed January 28, 1997)

Frank B. Shuster, Esq. (Argued)

_____

[1]Honorable Jane A. Restani, United States Judge for the United States Court of International
Trade, sitting by designation.

Costangy, Brooks & Smith, LLC
230 Peachtree Street, N.W.
Suite 2400
Atlanta, GA  30303

        Attorney for Petitioner

Peter Winkler, Esq.
Supervisory Attorney
Vincent J. Falvo, Jr., Esq. (Argued)
Frederick L. Feinstein, Esq.
General Counsel
Linda Sher, Esq.
Associate General Counsel
Aileen A. Armstrong, Esq.
Deputy Associate General Counsel
National Labor Relations Board
1099 14th Street, N.W.
Washington, DC  20570-0001

        Attorneys for National Labor Relations Board

————————

## OPINION OF THE COURT

————————

ROTH, <u>Circuit Judge</u>:

      Pursuant to the National Labor Relations Act ("NLRA"), an employer has an obligation to provide a labor union with information that the union needs in order to perform its collective bargaining obligations.  In this case, Teamsters Local 922 sought information about job applicants from the Hertz Corporation in connection with the Union's investigation into possible discriminatory hiring practices at Hertz.  Hertz refused to provide Local 922 with the information.  A National Labor Relations Board ("NLRB") panel ruled that Local 922 was entitled to job applicant data and ordered Hertz to provide the Union with all of the information

that the Union requested.  Hertz appeals the order.

Hertz argues that the NLRB's order is over broad and that the Union is not entitled to the information that it seeks because it failed to communicate to Hertz a reasonable basis for its request.  Our precedent establishes that before an employer is required to provide a union with information about individuals who are not members of the bargaining unit, the union must communicate a reasonable basis for its suspicion that the employer is discriminating.  Because we conclude that the Union failed to communicate such information to Hertz, we will reverse the NLRB's order and remand the case to the NLRB to dismiss the Union's complaint.

The National Labor Relations Board had jurisdiction of this case pursuant to 29 U.S.C. § 160(a).  Because Hertz transacts business within the jurisdiction of this court, we have subject matter jurisdiction over the final order of the Board pursuant to 29 U.S.C. § 160(f).

# I

Hertz appeals a National Labor Relations Board order requiring Hertz to provide Teamsters Local 922 with information about job applicants in the Washington, D.C. metropolitan area.  See Hertz v. Teamsters Local Union 922, 319 N.L.R.B. 597 (1995).  The order, which reversed an earlier ruling by an administrative law judge ("ALJ"), see Hertz v. Teamsters Local Union 922, No. 5-CA-23956 (Oct. 13, 1994), reprinted in 319 N.L.R.B. 601 (appendix to NLRB decision) (hereinafter ALJ decision), requires Hertz to provide Local 922 with the name, race, national origin, and gender of any job applicant who would have been covered by the labor agreement between Hertz and Local 922 if the applicant had been hired by Hertz.  The order covers individuals who applied as early as March 1990 for any of the following positions:  rental representative, reservationist, office clerical worker, courtesy bus driver, shuttler, combination worker, and vehicle service attendant ("VSA").

Hertz and the Union have a collective bargaining agreement.  The agreement requires Hertz periodically to send the Union a list of bargaining unit employees broken down by

4

job title. The list includes the name, seniority, and date of hire of each employee. When Local 922's president and business manager, Edward Kornegay, received one of these lists in the autumn of 1992, he became concerned about the individuals hired for the VSA position. From his inspection of the list, Kornegay noted that a number of the VSAs hired in 1992 appeared to be "foreign nationals." Kornegay's impression was based upon his observation that many of the surnames on the list were not "typically American."

Kornegay knew that there was "a large pool of unemployed unskilled or semiskilled young Afro-American men living in Washington, D.C." who might be interested in the VSA positions. Hertz, 319 N.L.R.B. at 597. Based upon his observations concerning the VSA list, Kornegay became concerned that Hertz might be intentionally discriminating against African-American job applicants by hiring foreign nationals instead of African-Americans. At about the time he reviewed the list, Kornegay also received telephone calls from members of the bargaining unit who worked at Hertz. These individuals said that Hertz appeared to be hiring only foreign nationals. In subsequent visits to various Hertz facilities, Kornegay observed that the company appeared to be employing greater numbers of individuals who appeared to him to be foreign nationals. Despite his concerns, Kornegay did not conduct any further investigation of Hertz's hiring practices during his visits.

In late 1992 or early 1993, Kornegay met with Michael Kovalcik, Hertz Manager of the Baltimore-Washington "pool." Kornegay says that he raised his concerns about the VSA list in this meeting and requested the applications of everyone who had applied for a position with the bargaining unit during the period in question. Kovalcik agrees that Kornegay asked for information about persons who had applied for bargaining unit positions, but, according to Kovalcik, Kornegay did not mention foreign-sounding names or possible discrimination by Hertz. Kovalcik testified that Kornegay asked instead for a list of the names and addresses of job applicants so that he could forward the list to a Teamster's committee involved in union

5

enrollment.[2] Kovalcik said that he would get back to Kornegay but did not do so.

In March 1993, Kornegay met with Kovalcik and Hertz's Vice President for the Mid-Atlantic Region, Joseph Happe. Kornegay testified that he again requested information about applicants and reiterated his concerns about discrimination. Kovalcik and Happe stated that Kornegay requested the names and addresses of job applicants and reiterated that he wanted the list for the Teamsters' committee on union enrollment. According to Kovalcik and Happe, Kornegay mentioned neither discrimination in hiring nor his suspicions concerning the names on the hiring list. Happe testified that Kornegay made a subsequent request for the list by telephone and that Happe denied Kornegay's request. Happe testified that Kornegay said again that he sought the list for Teamster purposes and that Kornegay did not mention discrimination.

When these preliminary conversations proved fruitless, an exchange of correspondence ensued. On April 30, 1993, Kornegay sent a letter to Kovalcik that read in pertinent part as follows:

> As a follow up to the Union's previous request, the Union is again requesting a list of all applicants for employment in the Washington Metro area who, if employed, would have been covered by the Labor Agreement between the Hertz Corporation and Local 922 for the period March 1990 to present. Such list to the extent it can be determined, should distinguish the applicant by race, National origin, and sex gender.
>
> As I explained earlier, this information is needed for the Union to assure that we are in compliance with Federal and State law and to assure that the provision referencing Non-Discrimination of the labor Agreement [sic] is beeing [sic] fully complied with.

---

[2] Although Kornegay and Hertz offer conflicting accounts of this meeting and subsequent meetings, the ALJ credited Hertz's account of the meetings. According to the ALJ, "Kornegay's testimony, more so than either Kovalcik's or [Hertz Vice President] Happe's suggests that his memory can be spotty and that on occasion Kornegay is willing to shade the truth." ALJ decision, 319 N.L.R.B. at 603. The NLRB sustained the ALJ's credibility determination. Hertz, 319 N.L.R.B. at 597 n.1.

App. at 209. The ALJ noted that this request did not ask for applicant addresses and that it was therefore unlikely that the Union intended to use this information for enrollment purposes. ALJ decision, 319 N.L.R.B. at 603.

Kovalcik responded to Kornegay on May 5, 1993, that "as you were informed in March, we do not feel that we are required to provide you with that information which you requested." App. at 210. On June 9, 1993, the Union's attorney sent a letter to Kovalcik that read in part:

As Mr. Kornegay has explained, the Union wants this information to determine whether the Company is in compliance with the collective bargaining agreement and relevant law.

By this letter, I renew Mr. Kornegay's request and further ask that, in addition to the information already requested for each applicant, you also indicate (1) the date on which the applicant applied for employment, (2) the applicant's color, (3) whether the applicant was hired, and (4) if the applicant was hired, the date on which he or she was hired.

App. at 212.

Hertz responded to this letter on July 9, 1993, with its legal conclusion that:

[A] showing must be made by the Union as to the relevancy of its request for applicant information. Certainly, the mere assertion by the Union that the information is needed to determine whether the Company is in compliance with the Collective Bargaining Agreement does not automatically trigger entitlement to applicant equal employment data.

* * * * * *

IBT Local 922 has not alleged that Hertz has engaged in discriminatory hiring practices. In fact, the Union has not alleged any breach of the Collective Bargaining agreement. If that is not the case and you wish to correct the record in that regard, I would appreciate hearing from you.

App. at 214-15. In a letter dated August 6, 1993, the Union's attorney replied that "Local 922 is requesting the information because it [sic] investigating allegations that Hertz may have discriminated against certain protected classes of applicants in making hiring decisions for

positions under the Agreement." App. at 216. Hertz did not provide the requested information to Local 922.

In an attempt to obtain the applicant information, the Union brought this action before the NLRB pursuant to NLRA §§ 8(a)(5) and (1). See 29 U.S.C. §§ 158(a)(5) and (1). The Union argued that Hertz violated the Act by withholding the information that the Union had requested in its letters. After a hearing at which Kornegay, Kovalcik, and Happe all testified, the ALJ determined that Local 922 was not entitled to the list of job applicants. He therefore recommended that the Union's complaint be dismissed.

The ALJ determined that the Union had no rational basis for believing that Hertz might be discriminating against African-Americans in any position except for the VSA position. ALJ decision, 319 N.L.R.B. at 605. The ALJ did conclude that further inquiry by Kornegay about the VSA position would have been justified. He based this determination upon the phone calls that Kornegay had received, Kornegay's interpretation of the last names on the seniority lists, and the fact that the universe of likely applicants for the VSA positions included a high percentage of African-Americans.[3] Id.

The ALJ decided, however, that Hertz was under no obligation to surrender the list of VSA applicants to the Union. Although the ALJ found that Local 922 had a rational basis for believing that Hertz was discriminating against African-Americans who applied for the VSA position, he concluded that the Union never adequately communicated to Hertz its factual basis for this belief. Id. at 606 (citing United States Postal Svc. v. N.L.R.B., 308 N.L.R.B. 1305

---

[3] The seniority list for the VSA position included the following names: Phung, Ayubi, Mangialai, Chhun, Riaz, Telila, Baig, and Ashraf. The list for the rental representative position included the names Adawi, Towne, Mohammed, Shammir, and Bhaskar. The courtesy bus driver list included the names Stewart, Smith, Dobbins, and Rusnak. The General Counsel did not seek to introduce into the record seniority lists pertaining to other bargaining unit positions. ALJ decision, 319 N.L.R.B. at 602.

(1992)).  The ALJ determined that, until Kornegay testified at the hearing, the Union had never communicated to Hertz the facts that caused Kornegay to believe that Hertz might be discriminating in its hiring of VSAs.  Id.

Moreover, Hertz provided evidence during the administrative proceedings to demonstrate that over half of the Hertz VSAs in the bargaining unit were African-American.  Id. at 604.  The ALJ found that, given the number of African-Americans employed in the VSA position, Hertz was not on notice of the reason for the Union's concern about discrimination.  Id. at 606 (citing Brazos Electric Power Cooperative, 241 N.L.R.B. 1016, 1018 (1979)).[4]  Hertz's managers credibly testified that they did not know before the administrative hearing why the Union was concerned about Hertz's hiring practices, despite the fact that Hertz had specifically inquired into the basis for the Union's concern in its July 9 letter.  Id.

On appeal, the NLRB overturned the ALJ's decision.  An NLRB panel found that pursuant to the collective-bargaining agreement, the Union demonstrated a sufficient basis for its request for information and gave adequate notice that it was requesting the information in order to fulfill its representative functions.

> The Union by its three letters advised the Respondent that the purpose of its information request was its investigation of allegations concerning whether the Respondent was discriminating in hiring for unit positions in violation of the nondiscrimination clause of the collective-bargaining agreement.  Under these circumstances, and in light of the fact that the Respondent was a party to this collective-bargaining agreement, we find that the Union provided the Respondent with an adequate basis of knowing that the information request was related to the Union's collective-bargaining duties.

Hertz, 319 N.L.R.B. at 599.

The NLRB also held that the Union had a basis to inquire about positions other

---

[4] According to the facts presented in the ALJ opinion, Hertz employed 49 VSAs during the relevant time period.  Of those 49 VSAs, the racial composition was as follows:  27 African-American, 11 White, 8 Asian American, and 3 Hispanic.

than the VSA position. The panel based this conclusion on Kornegay's inspection of the hiring lists, the phone calls that Kornegay received, and Kornegay's observations during his visits to Hertz. The panel made clear that "it is not necessary, as the [ALJ] seems to suggest, that the Union demonstrate actual instances of discrimination based on gender, race, and national origin, directed against employees from each of the unit job classifications before the Respondent must supply the requested information." Id. The NLRB ordered Hertz to provide the Union with all of the information that it requested in its April 30, May 5, and June 9 letters. Id. at 600. This ruling would require Hertz to provide information about the race, national origin, and gender of all applicants for any of the positions in the bargaining unit within the time frame specified by Local 922.

## II

Hertz challenges the NLRB decision on two grounds. First, Hertz asserts that the Union did not possess information sufficiently probative of discrimination to justify a request for information relative to all of the job classifications covered by the collective bargaining agreement. Second, Hertz argues that the Union never communicated to Hertz a factual basis for its charges of discrimination sufficient to compel Hertz to supply the Union with the applicant information.

We review the NLRB decision to determine whether it is supported by substantial evidence given the record as a whole and whether it is in accordance with applicable law. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951).

An employer's duty to provide information to a union derives from its duty to bargain with its employees. Under subsection 8(a)(5) of the NLRA, it is considered an unfair labor practice for an employer to refuse to bargain with the employees' representative. 29 U.S.C. § 158(a)(5). This obligation to bargain entails an obligation to "confer in good faith with respect to wages, hours, and other terms and conditions of employment . . .." 29 U.S.C. § 158(d);

10

N.L.R.B. v. United States Postal Service, 18 F.3d 1089, 1096 (3d Cir. 1994).

It is well settled that an employer, on request, must provide a union with information that is relevant and necessary for the union to perform its bargaining obligations. See, e.g., N.L.R.B. v. Acme Industrial Co., 385 U.S. 432, 435-36 (1967). Although hiring practices do not apply directly to employees, discriminatory hiring practices potentially have a direct effect on the workplace. Postal Service, 18 F.3d at 1099; East Dayton Tool and Die Co., 239 N.L.R.B. 141, 142 (1978) (citing Tanner Motor Livery, Ltd., 148 N.L.R.B. 1402, 1404 (1964)). Therefore, a hiring practice may be a mandatory subject of collective bargaining when the union has an "objective basis for believing [the practice] to be discriminatory." Postal Service, 18 F.3d at 1099; East Dayton, 239 N.L.R.B. at 142; see also Star Tribune v. Newspaper Guild of the Twin Cities, 295 N.L.R.B. 543, 548 n.17, 549 (1989).

As a general rule, the duty to bargain over hiring practices "arises only when the union has made a demand and has communicated information to the employer indicating that it has an objective basis for alleging discrimination." Postal Service, 18 F.3d at 1100. First, the union must show that it has a rational basis for believing that the hiring practice at issue may discriminate. Id. at 1101. Second, the union must make known to the employer its "reasonable basis" for believing that there is discrimination in hiring. Id. at 1100. "[O]nly after an employer has had an opportunity to consider the basis for a union's information or bargaining demand can the employer violate the NLRA by rejecting the demand." Id. at 1102 n.7. The "relevant evidence is that which has been communicated to the employer as of the time of the refusal to bargain . . .." Id.

### III

Based upon the employee lists, the phone calls received by Kornegay, and Kornegay's personal observations, the ALJ concluded that the Union had a reasonable basis to believe that Hertz was discriminating in hiring for the VSA position. The ALJ ruled, however,

11

that the Union had not, prior to the hearing, communicated this information to Hertz. The NLRB

panel issued a much broader ruling. The panel concluded that

based on Kornegay's examination of the list of vehicle service attendants, the contemporaneous calls he received from employees regarding new hires, and his subsequent visits to the Respondent's facilities, as well as the nondiscrimination clause in the collective-bargaining agreement . . . the Union had an adequate basis for seeking information relevant to an investigation of all possible discriminatory hiring practices in all unit classifications.

Hertz, 319 N.L.R.B. at 599 (emphasis added). Since we resolve this appeal on legal grounds,

our holding does not address the factual issue of whether there is sufficient evidence in the record

to support the NLRB's sweeping order.

Because the NLRB has failed to apply the legal standard mandated by our

precedent, we need not dwell on these factual ambiguities. The NLRA does not require an

employer to divulge information relating to individuals who are not part of the bargaining unit

until the union has communicated to the employer a reasonable factual basis for its belief that the

employer is discriminating. "[O]nly after an employer has had an opportunity to consider the

basis for a union's information or bargaining demand can the employer violate the NLRA by

rejecting the demand." Postal Service, 18 F.3d at 1102 n.7. The only evidence of discrimination

relevant to our consideration of the Union's demand for applicant information is the evidence that

the Union had communicated to Hertz at the time of Hertz's refusal to bargain. Id.

The Board appears to rely on two facts to support its ruling that the Union

satisfactorily communicated to Hertz its reasons for requesting the applicant data. First, Hertz

and the Union had entered into a collective bargaining agreement that prohibited direct or

indirect discrimination on the basis, inter alia, of race or national origin. See Hertz, 319

N.L.R.B. at 597 (quoting text of nondiscrimination agreement). Second, the Union made clear in

its letters that pursuant to its obligations under the collective-bargaining agreement, it was

investigating allegations of discrimination. The NLRB therefore concluded that "the Union

12

provided the Respondent with an adequate basis of knowing that the information request was related to the Union's collective-bargaining duties."

As the ALJ found, these communications did not satisfy our requirement that the Union communicate the basis for its bargaining demand. Postal Service, 18 F.3d at 1102 n.7. The Union was obliged to do more than state the reason and/or authority for its request for information. The Union was required to apprise Hertz of facts tending to support its suspicion that Hertz might be discriminating. Id. There is no evidence in the record that any of the Union's oral or written communications fulfilled this obligation. One letter from the Union noted that the Union sought the information "because it [was] investigating allegations that Hertz may have discriminated against certain protected classes of applicants in making hiring decisions for positions under the Agreement." This vaguely worded explanation for the request referenced no facts that would have supported an objective basis for the Union's concerns.

We stress that the Union did not need to demonstrate actual discrimination in order to obtain information about allegedly discriminatory hiring practices. It needed only to communicate some reasonable basis for its suspicion that the employer might be engaging in discrimination. Despite a request from Hertz for more information, see App. at 214-15, Local 922 failed to satisfy this minimal obligation.

In some situations, a union's reason for suspecting that discrimination is occurring will be readily apparent. When it is clear that the employer should have known the reason for the union's request for information, a specific communication of the facts underlying the request may be unnecessary. As the ALJ noted in this case, however, two of Hertz's managers testified credibly that they had no idea why the Union believed that Hertz's hiring practices might be discriminatory until they arrived at the administrative hearing. The employment charts published in the ALJ opinion demonstrate that a significant portion of the VSA workforce was comprised of African-Americans. Although this fact does not rule out the possibility of discrimination, it

13

does support Hertz's assertion that it could not readily determine the factual basis of the Union's claim.

Information pertaining to individuals who are not members of a union bargaining unit is not available to a union on demand. A union must communicate facts that reasonably support its suspicion of discrimination in hiring. Because Local 922 failed to do so in this case, we will grant Hertz's petition for review, reverse the NLRB panel decision, and remand the case to the NLRB to dismiss the Union's complaint.